JANVIER, Judge.
The automobile accident from which this litigation results occurred (at about four o’clock) in the late afternoon of July 15th, 1951, on St. Charles Avenue just above the corner of Webster Street, in the City of New Orleans. Leonardo Mar-mol, one of the plaintiffs, was driving a 1948 Chevrolet Coupe down St. Charles Avenue and with him as a' guest passenger, was Miss Julia Menendez, the other plaintiff. The'defendant, William W. Wright, was driving- his automobile down St. Charles Avenue in the same direction, and he attempted to pass the Marmol car on its right side just before they reached.the intersection of Webster Street. The two cars came together, and, the Marmol car was forced into a light standard on the neutral ground of the avenue. As a result, that car was badly damaged, and Miss Menendez sustained physical injuries.
Marmol and Miss Menendez brought this suit against Wright, Marmol 'praying -for judgment for $332.55 as the cost of making the necessary repairs to his car, and Miss Menendez praying for judgment for $850.-00 to compensate her. for her physical injuries pain an'd suffering, discomfort, shock and mental anguish.
Plaintiffs assert that as thé Marmol car was proceeding down the avenue at a reasonable speed of 25 miles per hour' with the Wright car following and overtaking it at a-very high rate of speed, Wright attempted to pass the Marmol car on the right side and' that the Wright' car then-swerved suddenly to its left causing its left rear fender to “hook and lock’’ with the right front fender of the Marmol car, in turn causifig that car to go out of control and to strike the light standard on the neutral ground.
Wright is charged with negligence -in that he failed to have his automobile under control, failed to give any warning of his approach, operated his-car at a speed above the legal limit, attempted to pass the Mar-mol car on the wrong side, was under the influence of liquor, and swerved his car directly in front of the Marmol car.
It is charged that in operating his car in this manner, he violated several of the provisions of the City traffic ordinance, No. 13,-702, C.C.S., which was later offered in evidence.
Wright admitted the occurrence of- the accident but denied liability to plaintiffs, averring that he was driving in a careful, prudent manner, following the Marmol car, and that, as the Marmol car approached Webster Street and the driver thereof gave a signal indicating an intention to turn to the left to cross the neutral ground, defendant then turned his automobile slightly to the right to pass the other car, but that as he was in the act of passing the other car, it was turned suddenly to the right making it impossible for him'to pass without striking it. '
In the .alternative that it should appear that Wright was in any way at fault, he alleges that the proximate cause of the accident .was the contributory negligence of Marmol, -and he further, alleges that .Mar-moLfind-,Miss Menendez were “on a joint enterprise, for their common benefit,” and that consequently. ■ the .negligence of Mar-mol should be.imput.ed^to Miss Menendez..
After a trial on the merits, there was judgment in favor of Marmol for $100.00, and also judgment in favor of Miss Menen-dez for $100.00.
Both--plaintiffs have appealed. Defendant has neither'appealed nor answered the appeal. However, should it appear that he was not at fault, fhere could be no increase-in-the amounts awarded -to the two plaintiffs even though the record shows that the repairs to the Marmol car cost substantially more than the $100.00 allowed and that the injury sustained by Miss Men'endez justified an award in excess of the $100.00 allowed her. • Consequently, although Wright has neither appealed nor answered the appeal, we think it necessary to investigate the question of whether there is liability in him. Of this the record leaves no doubt.
It is obvious that Wright was, attempting to pass the Marmol car on its right side, which was a violation of the City traffic ordinance, No. 13,702, C.C.S., which, in paragraph (a) of Section 12 of Article V, provides that:
*530 “The operator of a vehicle overtaking another vehicle proceeding in the same direction shall signal with his horn and pass to the left of the overtaken vehicle at a safe distance and shall not again drive to the right side of the highway until clear of such overtaken vehicle.”
It is true that Wright says that Marmol gave a signal which indicated that he intended to turn to the left and cross the neutral ground of the avenue, hut the record shows that no such signal was given by Marmol.
Marcel Majeau, a motorist who was following the two cars down the avenue, says that he was driving about 100 or ISO feet back of the Wright car, and that the Wright car was behind the Marmol car and that both were to the left on the neutral ground side of the driveway; that Wright “cut out, and as he cut out, he cut sharply to the left in front of Mr. Marmol’s car and hooked him in between the fender and the bumper, and as he hooked him, he drove him into the neutral ground, and that is where he hit the light standard.” :
Marmol says that he was driving down the avenue at a speed of 25 or 30 miles an hour; that the Wright car “was passing me at a faster speed on my right side * * * when he hit me and pulled me out of the road.”
Miss ’Meriertdez says that Marmol was driving slowly “when this Mr. Wright’s car hooked the right side of Mr.' Marmol’s car in front * * She added:
“You could see he was driving at a very fast speed because he shook our ' car very strongly. * * * ”
There is some evidence to the effect that Wright may have been to some extent under the influence of liquor at the time. Joseph L. Disoso, a patrolman in the City Police Department, was called to the scene of the accident and arrived shortly after it had occurred. Referring to Wright, he said:
“He had a few drinks on him, but I wouldn’t say he was intoxicated. I am not a judge of that.”
He added:
“ * * * I will say he had liquor on his breath.”
Wright says:
“I will say I had one highball at this friend’s house * *
A friend of Wright, Norman A. Kuchler, says that Wright had been with him just before the occurrence of the accident and that Wright “had had one highball.”
We think that there is no doubt that Wright was responsible for the occurrence, and it therefore becomes necessary to consider whether the amounts awarded to the plaintiffs were correct. ■
In the first place, it is interesting to note that the repairs to the Marmol car cost $332.55 and that of this amount Marmol himself paid only $100.00. He insists, however, that he should be permitted to recover the entire amount, in spite of the fact that he executed a subrogation in. favor of his insurer up to the amount paid by it, $232.-55, and that notice of that subrogation was given to Wright and demand was made on Wright by the subrogee, Marmol’s insurer.
When Wright received the notice of sub-rogation and the demand of the attorneys for the subrogee, he made no protest against the fact that part of the original claim had been assigned to Marmol’s insurer, nor did he consent to that partial assignment and yet, in the case which is now before us, he objects to the inclusion by Marmol of that part of his claim which Marmol had assigned to his insurer. This fact, that Wright, when he received notice of the assignment and received demand by the as-signee; neither agreed to the partial assignment nor protested against it, raises an interesting question.
There can' be no doubt that a debtor may refuse to recognize the assignment of a part of the debt. Stein v. Williams Lumber Co., La.App., 36 So.2d 62; King v. Havard, 5 Mart., N.S., 193; Centrelle v. LeGoaster, 3 Rob. 432; Miller v. Brigot, 8 La. 533; LeBlanc v. Parish of East Baton Rouge, 10 Rob. 25.
We think it is equally clear that, where a partial assignment is attempted and *531 the debtor assents to such partial assignment, the original creditor may no longer sue for the entire amount of the original claim, and the debtor may not object to the fact that two suits may result from the division pf the debt into two parts.
The interesting question which is before us arises whenever the debtor, notified of the partial assignment, does nothing to indicate his consent or his refusal to consent to such assignment. In what position does this place the original creditor and the assignee of the original creditor? As between' them, the creditor and the assignee, the assignment is valid and binding whatever position the debtor may take when suit is brought against him.
In several of the cases cited above, notably Miller v. Brigot and LeBlanc v. Parish of East Baton Rouge, it was said that a partial assignment is not binding on the debtor unless there has ' been an express consent to such partial transfer of the debt. If this be true, then it necessarily follows that where the debtor is notified of a partial assignment and makes -no objection thereto, but does nothing which could be construed as an express agreement to the partial assignment, the partial assignment as against him is not- effective, and he, the debtor, when sued for the entire debt by the original claimant, may not in that suit interpose. the objection that a part of the claim no longer belongs to the original claimant. Stated slightly differently, if such a debtor is notified of such partial assignment and takes no position one way or the other, it must be assumed that he has not expressly agreed to the division of his obligation and that, therefore, in a subsequent suit by the original debtor for the entire amount, he cannot be heard to object and that it will be assumed, as it was in Hanton v. New Orleans & C. R. Light & Power Co., 124 La. 562, 50 So. 544, that the original creditor' is presenting not only his own claim for his own account, but also the claim of the as-signee for that part which was assigned. !
It may follow that where there is a partial assignment and the debtor has done nothing to indicate his position, the original creditor and his assignee may be in a predicament as to whether there should be two suits or only one, but they can settle that difficulty in advance by an agreement that if the debtor fails to expressly agree to the partial assignment, the original creditor must bring the necessary suit on behalf of. both himself and his assignee.
Our conclusion is that, since Wright did not expressly consent to the assignment of a part of the original claim, he cannot object to, the fact that Marmol in this suit has sued for the-entire amount of the original claim. Accordingly, the amount of the judgment insofar as it runs in favor of Marmol must be increased to $332.55.
When we come to consider the amount of the award to Miss Menendez, we find that the record justifies an award somewhat greater than that found in the judgment appealed from. It appears that when the car- was struck, her head hit the windshield and she was rather severely' stunned. She suffered lacerations of the forehead and of her left shoulder, as well as several bruises. On the advice of her physician she went' to the Charity Hospital where her wounds were treated; The wounds bled very profusely over most of her clothing^ and for several days after the accident small pieces of glass which had lodged in her forehead were removed from time to time upon washing her face. She says that she also suffered headache for some two weeks after the accident. We think that the amount awarded her should be increased to $250.00.
, Accordingly, the judgment appealed from is amended by the increase of the amount awarded to plaintiff, Leonardo Marmol, to $332¡55, and by the increase o,f the amount awarded to' Miss Julia Menendez to $250.00. As thus amended the judgment is affirmed, defendant to pay all costs.
Amended and affirmed.