**GEO. H. JETT DRILLING CO.**

**v.**

**E. H. TIBBITS, d/b/a Tibbits Drilling Company, Lamb Rental Tools, Inc., National Supply Division, Armco Steel Corporation.**

**Houston Oil Field Material Company, Inc., Reed Roller Bit Company, United States of America, E. D. Squires et al., Gordon C. Freeman et al., Intervenors.**

**Civ. A. No. 8636.**

United States District Court
W. D. Louisiana,
Monroe Division.
May 22, 1964.

John B. Hussey, Jr., Hussey & Moore, Shreveport, La., for plaintiff.

Warren D. Rush, Bean & Rush, Lafayette, La., Sidney B. Galloway, Cook, Clark, Egan, Yancey & King, Shreveport, La., for defendants.

Fred Fudickar, Jr., Oliver, Digby & Fudickar, Monroe, La., Lawrence L. May,

Jr., May & Woodley, Patrick W. Looney, Bodenheimer, Looney & Jones, Shreveport, La., Edward L. Shaheen, U. S. Atty., and Edward V. Boagni, Asst. U. S. Atty., Shreveport, La., for intervenors.

BEN C. DAWKINS, Jr., Chief Judge.

September 11, 1961, Geo. H. Jett Drilling Co., of Shreveport, Louisiana, executed a contract with E. H. Tibbits, a resident of Texas, d/b/a Tibbits Drilling Company, in which Tibbits agreed to drill an oil well in Jefferson County, Mississippi, for $39,350.00. Tibbits' subsequent financial difficulties prompted his creditors to demand payment of their claims by Jett from the amount it would otherwise owe Tibbits under the contract.

January 9, 1962, Jett instituted this interpleader action under authority of 28 U.S.C. § 1335, and has made two deposits into the registry of the court totaling Twenty-six Thousand Six Hundred Three and 32/100 Dollars ($26,603.32). Claims far in excess of this amount have been asserted against the fund by Tibbits' creditors, each claiming the right to priority of payment.

The following sequence of events sets forth the facts to which reference will be made in determining priority of the claims involved and ultimate distribution of the fund:

1961

July 26—$2,125.95 Federal taxes assessed against Tibbits.

Sept. 11—Jett accepted Tibbits' offer to drill the well for a basic price of $39,350.00.

Oct. 9—Notice of lien filed against Tibbits for $2,125.95 Federal taxes.

Oct. 17 through Dec. 21—Materials and labor supplied by Houston Oil Field Materials Company, Inc. (HOMCO) for oil well in Mississippi.

Oct. 19—Undated letter, signed by Tibbits, but not by Jett, purporting to assign proceeds of the contract to HOMCO.

Nov. 3—$3,198.71 additional Federal taxes assessed against Tibbits.

Nov. 28—Notice of lien filed for $3,198.71 Federal taxes.

Dec. 5—Louisiana attachment by N. S. D., Armco Steel Corporation (Armco).

Dec. 18—Mississippi attachment by Lamb Rental Tools, Inc., (Lamb), in support of claim for $1,943.48.

Dec. 30—Invoice dated December 30, 1961, for $4,488.64 in materials furnished by Reed Roller Bit Company (Reed).

1962

Jan. 9—Interpleader action filed by Jett.

Jan. 10—Order of Court enjoining defendants from instituting or prosecuting any suit or proceeding in any State or Federal court other than this one pertaining to the funds deposited in the registry of this Court.

Jan. 12—$2,530.86 additional Federal taxes assessed.

Jan. 15—Armco, through its agent for service in New Orleans, Louisiana, served with injunction.

Jan. 16—Armco attorneys in Shreveport, Louisiana, obtained judgment in State District Court allowing its claim against Tibbits and maintaining its attachment against Jett.

Jan. 16—Notice of lien filed for $2,530.86 Federal taxes.

Feb. 5—$592.46 additional Federal taxes assessed.

Feb. 21—Notice of lien filed for $592.46 Federal taxes.

Mar. 6—Letter notice of laborer's claim from attorney for Squires, et al., mailed to Jett.

Mar. 23—$975.87 additional Federal taxes assessed.

Of course, the judgment obtained by Armco after this Court's injunction issued can be given no effect. Armco contends that, even without judgment, Louisiana law establishes a privilege in behalf of the attaching creditor. We do not agree. A Louisiana attachment not perfected by judgment does not create a privilege in favor of the attach-

ing creditor. LSA–Code of Civil Procedure, Art. 3511 (1960); Board of Supervisors of La. State University v. Hart, 210 La. 78, 26 So.2d 361 (1946); General Motors Acceptance Corp. v. Jordan, 65 So.2d 627 (La.App.1st Cir. 1953); In Re Bryce Cash Store, 12 La.App. 365, 124 So. 544 (La.App.2d Cir. 1929).

In Hart the court specifically noted that "* * * the lien and privilege resulting from an attachment, *when recognized by judgment on the main demand,* relates back to the date of the attachment." Language from this case, cited by Armco in support of its position, is misleading when quoted out of context.

The First Circuit Court of Appeal stated in Jordan, "* * * no privilege can be gained by an attachment until the claimant has obtained a judgment." Thus Armco stands as an unsecured creditor here.

■ An attaching creditor in Mississippi is in a much more favorable position and acquires a lien from date of service of the writ. Associates Discount Corporation v. Clark, 240 Miss. 723, 128 So. 2d 535 (1961); Ryals v. Douglas, 205 Miss. 695, 39 So.2d 311 (1949); Slattery v. P. L. Renoudet Lumber Co., 125 Miss. 229, 87 So. 888 (1921); 7 C.J.S. Attachment § 254. Therefore, the lien of Lamb for $1,943.48 as of December 18, 1961, is recognized; but it is subordinate to certain of the federal tax liens which will be discussed infra.

The Mississippi Supreme Court has held that a lien for suppliers of labor and materials, the so-called mechanic's lien of Section 356, Mississippi Code of 1942, is valid without the necessity of reduction to judgment. United States v. Colotta, 224 Miss. 33, 79 So.2d 474, 86 So.2d 19 (1955). But that court's holding that such liens were entitled to priority over a lien for federal income taxes was reversed. United States v. Colotta, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725 (1955). Section 372 establishes a similar lien for the protection of laborers and materialmen and, if the statutory requirements were met, it also probably would be considered as a perfected lien without necessity of judgment as against other claimants, but inchoate when ranked with a federal tax lien.

■ One of the statutory requirements for establishment of the lien provided in Section 372 is that written notice including a claim to the benefit of this statute must be given to the owner. Section 372, Mississippi Code of 1942. Cf. McLendon v. Indianola Lumber Co., 128 Miss. 265, 90 So. 885 (1922). The laborers argue that sending checks to Jett for approval notified the owner of their claims. Even if this constituted notice in writing of the claim, it fails to meet the requirement that the benefits of the statute have been claimed. The letter written on behalf of some of the laborers dated March 6, 1962, claiming benefits of the statute after Jett had deposited all remaining proceeds of the contract into the registry of the court came too late. The money could not then be bound in the hands of the owner as provided by the statute.

The claims of the laborers, Squires, et als., and Freeman, et als., and of the materialman, Reed, are not entitled to priority.

■ HOMCO claims priority as a result of the undated letter signed by Tibbits, purporting to assign a sufficient portion of the contract proceeds to it to pay for its services. Whether or not a right under a contract is capable of being transferred is determined by the law of the place where the contract was entered into; but the validity and effect of an assignment itself is determined by the law of the place of assignment. 11 Am.Jur. § 133. The assignment here was made in Mississippi.

Section 373, Mississippi Code of 1942, provides:

"No contractor or master workman except as hereinafter provided, shall have the right to assign, transfer, or otherwise dispose of in any way, the contract or the proceeds thereof, to the detriment or prejudice of the subcontractors, journeymen, labor-

ers, and materialmen as declared hereinbefore and all such assignments, transfers, or dispositions shall be subordinate to the said rights of the subcontractors, journeymen, laborers and materialmen, as well as the owner. Provided, however, that this section shall not apply to any contract or agreement where the contractor or the master workman shall enter into a solvent bond conditioned as provided for in the following section."

Tibbits did not give bond as required by the statute and therefore could not assign the proceeds of the contract so as to cut off the rights of the laborers and materialmen.

■■ The rights of one claiming under a Mississippi assignment against those of an attaching creditor in Louisiana, where the debtor is here and the funds attached likewise are here, are controlled by Louisiana law. Gordon v. Vallee, 119 F.2d 118 (5 Cir. 1941). Under Louisiana law a partial assignment which is not expressly accepted by the debtor is ineffective as against him. Pelican Supply Co. v. Shreveport Plumbing Co., 128 So.2d 924 (La.App.2d Cir. 1961); Marmol v. Wright, 62 So.2d 528 (La.App.Orl.Cir. 1953). The only evidence as to express acceptance by Jett properly was objected to as hearsay, and thus was unavailing as proof of such acceptance. Consequently, HOMCO's assignment is not entitled to preference over the claim of Armco.

■ As against the federal tax lien, HOMCO's assignment fails to meet the requirement of choateness. The amount of the assignment was not determined with certainty prior to assessment of the first two federal tax liens. The Supreme Court, in United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963), quoting from United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), stated: "The federal rule is that liens are 'perfected in the sense that there is nothing more to be done to have

a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.' " The amount of HOMCO's assignment was uncertain and cannot prevail against the federal tax liens assessed prior to filing of this interpleader action.

Although citing no case directly in point, HOMCO has alluded to several Mississippi cases indicating that no particular form is required for a valid controlling assignment of proceeds from a contract; that notice to the debtor is sufficient to bind him even without his consent. We believe that Mississippi courts would apply the general rule announced in 6 C.J.S. Assignments § 75 concerning partial assignments:

"In equity, the reason for the rule of courts of law against unaccepted partial assignments does not exist, as all of the parties in interest can be brought before the court and their rights settled in one action and by one decree. Therefore, ordinarily in equity the absence of the debtor's consent or acceptance is not fatal to the validity of the assignment of a part of a chose in action or fund in the debtor's hands, and mere notice to the fund-holder is sufficient to complete the assignment. According to some authority, however, partial assignments without the consent of the debtor are invalid in equity as well as at law. Yet even this rule is not of universal application in the jurisdictions which apply it and it is not adhered to where the debtor has brought an interpleader proceeding for a distribution of the fund assigned."

The rights of HOMCO as an assignee and of Lamb as an attaching creditor are controlled by Mississippi law. The assignment, executed October 19, 1961, primes the attachment lien of December 18, 1961. The situation created is commonly referred to as "circular priority." HOMCO's assignment primes the Mississippi attachment lien; the Mississippi attachment lien primes all claims but

the federal tax lien; but the laborers, materialmen, and Armco are not primed by HOMCO's assignment.

The solution of this problem is suggested by the Supreme Court's decision in United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367 (1954), and the Fifth Circuit's ruling in Exchange Bank & Trust Co. v. Tubbs Manufacturing Co., 246 F.2d 141 (1957). The amount due Lamb, claiming preference to other creditors, in the sum of $1,943.48, will be set aside. HOMCO is given priority over Lamb to payment for this amount. The remainder of HOMCO's claim is unsecured.

The lien for federal taxes assessed prior to the interpleader action primes all other claims. Annot., 94 ALR 2d 748 (1964), "Liens competing with federal tax priorities as choate or inchoate." The only two claims recognized as entitled to priority do not meet the federal test of choateness necessary to prime federal tax liens. In United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950), United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955), and United States v. Liverpool & London Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955), the Supreme Court held that a federal tax lien primed an attachment lien not perfected by judgment even though the state considered the attachment to be specific and perfected. Likewise, the assignment to HOMCO of an undetermined amount of proceeds from the contract to secure payment for services to be rendered must be treated as an inchoate lien for purposes of ranking it with perfected federal tax liens. Cf. United States v. R. F. Ball Construction Co., Inc., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958).

For the federal taxes assessed after January 9, 1962, the question presented is whether a federal tax lien attached to the funds deposited in the registry of the court. 26 U.S.C. § 6321 provides that the lien attaches only to property belonging to the taxpayer:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321.

■ To determine whether the taxpayer has an interest in the property, we look to state law. United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); and United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). Durham indicates that even though the taxpayer may have a right to the residue of a fund after competing claimants have been satisfied does not mean necessarily that he has a property interest in the fund. The Government's lien can attach only to the balance which ordinarily passes to the taxpayer.

In a recent decision, the Second Circuit applied these principles in Fine Fashions, Inc., v. United States, 328 F.2d 419 (1964). Although it held that under the facts of that case the contractor had sufficient property interest in the funds retained by a finance corporation to subject them to a federal tax lien, it noted that under New York law a contractor who had failed to pay his materialmen and subcontractors would not have a property interest in funds retained by the owner unless there was a balance remaining after satisfying the outstanding claims.

■ Here it is manifest that there will be no residue which Tibbits may claim. Indeed, most of the claimants will receive payment of less than 40% of their due. An interpleader action is equitable in nature and controlled by equitable principles. After enjoining the other claimants and preventing them from perfecting their claims, it would be highly inequitable to allow the government to assert a lien for taxes assessed after the interpleader was filed. But for

the injunction, Armco's claim, and perhaps others, would have been perfected and would have depleted the fund, leaving nothing to satisfy such subsequently assessed federal taxes.

The taxes and penalties assessed after the interpleader was filed are entitled to no preference and will stand as unsecured claims. Annot., 94 ALR 2d 748, 788–790 (1964).

Under certain circumstances interest is not payable on funds *in custodia legis*, but this is true where a fund is to be shared by claimants without privileges, or by those with claims of equal rank. Holders of privileges or liens with priority over other claimants are entitled to interest to be paid out of the fund. First National Bank of Houston v. Ewing, 103 F. 168, 190, cert. denied 179 U.S. 686, 21 S.Ct. 919, 45 L.Ed. 386 (1900).

Other parties to this action either have voluntarily dismissed their claims or, having been notified of the trial and failing to attend or otherwise prove their claims, have abandoned them.

From the funds in the registry of the court, and without serious objection, disbursement of $1,450.10 was ordered November 20, 1963, for the interpleader's attorneys' fees, expenses and court costs. Likewise, an additional $37.70 was disbursed in payment of the court reporter's fee. Therefore, the remainder of the fund should be distributed as follows:

| | | |
|---|---:|---:|
| Amount in Registry of Court: | | $25,115.52 |
| Federal Taxes | | |
|     Assessed July 26, 1961 | $2,125.95 | |
|     Assessed Nov. 3, 1961 | 3,198.71 | |
|     Assessed Jan. 5, 1962 | 592.46 | |
|     Penalties levied prior to 1/9/62 | (To be calculated) | |
|     Interest | (To be calculated) | |
|     Remainder | (To be calculated) | |
| Deduct amount of Lamb attachment, but award this to HOMCO | $1,943.48 | |
| Interest from date of judicial demand | (To be calculated) | (To be calculated) |
| BALANCE IN REGISTRY OF THE COURT | | (To be calculated) |
| Total of Unsecured Claims: | | |
|     Federal taxes: | | |
|         Assessed Jan. 12, 1962 | $2,530.86 | |
|         Assessed Mar. 23, 1962 | 975.87 | $ 3,506.73 |
|     Freeman, et al. | | 770.20 |
|     Houston Oil Field Materials Co. | | |
|         Total Claim | $5,701.99 | |
|         Less preferred payment | 1,943.48 | 3,758.51 |
|     Lamb Rental Tools, Inc. | | 1,943.48 |
|     N. S. D., Armco Steel Corp. | | 29,640.01 |
|     Reed Roller Bit Co. | | 4,488.64 |
|     Squires, et al. | | 2,601.76 |
| | | $46,709.33 |

BALANCE IN REGISTRY OF COURT divided by $46,709.33 equals pro-rata of each unsecured claim to be paid from balance of funds in registry of the court.

In order to facilitate distribution of the fund, interest due on the preferred claims will be calculated and paid as of the effective date of this opinion.

A proper decree should be presented.