303 So.2d 761 (1974)
LANDRY AND PASSMAN REALTY, INC.
v.
BEADLE, SWARTWOOD, WALL & ASSOCIATES, INC., et al.
No. 9972.
Court of Appeal of Louisiana, First Circuit.
October 14, 1974.
Rehearing Denied December 16, 1974.
Writ Refused February 7, 1975.
Donald C. Theriot, Baton Rouge, for appellant.
James F. Abadie, Baton Rouge, for appellee-plaintiff.
William H. Farris, and John T. Cooper, New Orleans, for defendants-appellees Beadle, Swartwood, etc.
James Wall, in pro per.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
*762 LANDRY, Judge.
This appeal presents the single issue of whether a defendant in a concursus proceeding instituted pursuant to LSA-C.C.P. arts. 4651-4662, can recover, out of the deposit, an unliquidated claim under an alleged contract between claimant and another defendant, which contract is totally unrelated to the transaction which gave rise to the concursus proceeding. The trial court held such a claim could not be prosecuted to judgment in a concursus action. We affirm.
The facts are undisputed. Landry & Passman Realty, Inc. (Stakeholder), licensed real estate brokers domiciled in East Baton Rouge Parish, and defendant, Beadle, Swartwood, Wall & Associates (BS&W), a Louisiana corporation domiciled in Jefferson Parish, represented the vendors and purchasers, respectively, in two separate and unrelated real estate transactions. For convenience, the transactions are referred to as the Alford Transaction, which was consummated January 13, 1973, and the Matta Transaction, which was closed January 26, 1973.
Stakeholder and BS&W agreed to share all commissions accruing from the transactions, which commissions were collected by Stakeholder. The commissions from the Alford Transaction were handled agreeably between the parties concerned. Carson Davis, a domiciliary of Tangipahoa Parish, was a licensed real estate salesman employed by BS&W when both transactions were closed. BS&W's portion of the commission on the Matta Transaction amounted to $15,246.00. Before Stakeholder paid BS&W the commission due on the Matta Transaction, Davis made claim on Stakeholder for the sum of $4,573.80, which Davis claimed as his alleged 30% share of BS&W's 50% of the Matta commission. Davis also demanded payment of $11,700.00 claimed as BS&W's agent in the Alford Transaction. Stakeholder then filed this concursus impleading Davis, BS&W and James Wall, a BS&W stockholder domiciled in Orleans Parish. Wall answered disclaiming interest in the stake. Davis answered claiming the commissions allegedly owed him by BS&W from both transactions. BS&W answered conceding its indebtedness to Davis in the sum of $4,573.80 on the Matta Transaction, and also admitting Davis' right to litigate that claim herein. BS&W contested Davis' right to litigate his claim for the Alford Transaction commission in this proceeding. The trial court dismissed Davis' demand insofar as it claimed a commission from the Alford Transaction on the ground that said claim did not arise out of the transaction which generated this concursus.
Appellant places considerable reliance herein upon his pre-concursus demand upon Stakeholder wherein Appellant informed Stakeholder of Appellant's intent to attach the funds held by Stakeholder. It is obvious that in so doing, Appellant was attempting to bring this case within the ambit of certain Federal decisions upon which Appellant relies heavily. In numerous cases, all hereinafter considered, parties having secured claims, or having obtained garnishment or attachment of funds, were allowed to intervene in concursus or interpleader proceedings. For reasons hereinafter made manifest, we deem Appellant's antecedent demands of no consequence.
Concursus, a remedial procedure is set forth in LSA-C.C.P. arts. 4651-4662. The following pertinent language is found in Article 4651, above:
"A concursus proceeding is one in which two or more persons having competing or conflicting claims to money, property, or mortgages or privileges on property are impleaded and required to assert their respective claims contradictorily against all other parties to the proceeding."
Prior to enactment of the aforementioned rules governing proceedings of this nature, Act 123 of 1922 provided a similar but considerably more restrictive remedy. *763 Some of the provisions of Act 123, above, are still embodied in Articles 4653, 4654, 4655, 4658 and 4659, above. However, Article 4652, above, whose source is Federal Rule of Civil Procedure 22(1), reads as follows:
"Persons having competing or conflicting claims may be impleaded in a concursus proceeding even though the person against whom the claims are asserted denies liability in whole or in part to any or all of the claimants, and whether or not their claims, or the titles on which the claims depend, have a common origin, or are identical or independent of each other.
No claimant may be impleaded in a concursus proceeding whose claim has been prosecuted to judgment. No person claiming damages for wrongful death or for physical injuries may be impleaded in a concursus proceeding, except by a casualty insurer which admits liability for the full amount of the insurance coverage, and has deposited this sum into the registry of the court."
Appellant correctly argues that where our laws are patterned on Federal law, our courts may look to the Federal jurisprudence in the interpretation and application of such laws. Kay v. Carter, 243 La. 1095, 150 So.2d 27; Cousins v. State Farm Mutual Automobile Insurance Company, La.App., 258 So.2d 629.
Appellant also properly contends that concursus may appropriately be invoked to avoid multiple liability and also to prevent multiple litigation or double vexation upon a single liability. Louisiana Intrastate Gas Corp. v. Muller, La., 290 So. 2d 888. We add, however, that the primary purpose of concursus is to protect the stakeholder from multiple liability from conflicting claims and from the vexation attending involvement in multiple litigation in which the stakeholder may have no direct interest. We deem it elementary that in the vast majority of cases, as in this instance, the stakeholder is an innocent third party possessing funds or property admittedly belonging to or owned by another, but being claimed by two or more other parties asserting conflicting claims thereto.
As interpreted by prior jurisprudence, Act 123 of 1922 contained two limitations which greatly restricted use of the interpleader action provided for therein. Under the 1922 Act, only a stakeholder, that is one admitting liability and claiming no interest in the deposit, could bring an interpleader action. Secondly, the 1922 Act required that claimants' rights or title have a common origin. See Introduction, LSA-C.C.P. Title X, Vol. 9 LSA-C.C.P., pages 356-358; See also, Official Revision LSA-C.C.P. art. 4652.
Relying on Article 4652, above, which provides that contesting claims need not have a common origin, and also on numerous Federal cases, Appellant maintains he has a right to assert his claim herein despite the fact that it arises from a source completely unrelated to the transaction which generated the deposited funds. In this regard, Appellant cites cases holding that a stakeholder, who is merely threatened with one or more claims to the stake, may institute concursus to avoid attachment and multiple litigation or vexation. Our own jurisprudence recognizes this right under the proper circumstances. Louisiana Intrastate Gas Corp. v. Muller, La., 290 So.2d 888.
In a concursus proceeding, the jurisdiction of the court is limited to disposing of the fund on deposit and relieving the stakeholder from further liability to the impleaded claimants arising out of or as a result of the stakeholder's ownership or possession of the fund. The interpleaded parties must then establish their respective claims to the fund, following which the claimants are paid in order of priority until the fund is exhausted.
In this instance, BS&W's claim arises directly out of the contract between BS&W and Stakeholder, which agreement produced the fund. Although Appellant's *764 claim differs in origin, this distinction is not per se a matter of consequence. Article 4652, above.
The operative factor in this case is the basic nature of Appellant's claim. It is of the utmost significance that Appellant's claim is based on an obligation allegedly owed Appellant by BS&W on a matter which not only differs in origin from BS&W's claim to the concursus fund, but which also bears no relationship whatsoever to the transaction which gave rise to the concursus proceeding itself. Equally important in this instance, Appellant does not claim as a lienholder, or by virtue of an attachment, sequestration or privilege conferring upon Appellant any right, preferential or otherwise. Neither does Appellant claim as a judgment creditor of BS&W. Appellant claims merely as an unsecured creditor asserting an unliquidated claim which arose out of a transaction foreign to that which generated the concursus fund.
Admittedly a claimant to a fund may be impleaded in a concursus proceeding in any court of competent jurisdiction, irrespective of which court may be the proper venue for bringing an ordinary action against him. However, to allow assertion of a claim of this nature against a claimant in a concursus proceeding, in a court which would not ordinarily be the proper venue for prosecution of the claim, would do violence to our general venue laws. In this instance, for example BS&W would, without its consent and over its express objection, be required to defend an action against it on a claim totally unrelated to the concursus fund or the matter out of which the fund arose, in a court which would ordinarily not be the proper venue.
Our own research disclosed a recent Federal District Court Case, Maryland Casualty Company v. Sauter, 58 F.R.D. 466 (N.D.Miss.1973), which is in point. In that case, Issa intervened in an interpleader action, and contested Sauter's right to share in the fund claiming Sauter was guilty of negligence which contributed to the accident giving rise to the interpleader. Sauter opposed Issa's intervention and objected to the latter's attempt to compel litigation of the negligence issue in the interpleader action. The court rejected Issa's intervention stating:
"... the court finds that it would be inappropriate for the scope of the action to be enlarged so as to bring within the confines of the action the total litigation between the parties. To permit Issa to litigate with Sauter the proximate cause of the collision of the vehicles in the action sub judice would, for all practical purposes, determine their respective rights in the controversy. This would compel Sauter to litigate the issues in a forum not of her choosing and in which she would not otherwise be required to litigate."
We conclude that Appellant may not prosecute his claim for commission from the Alford Transaction to judgment against BS&W herein without BS&W's consent to try the matter in this concursus.
In urging a contrary result herein, Appellant relies on the following Federal authorities: National Fire Ins. Co. v. Sanders, 38 F.2d 212 (5 Cir. 1930), affirmed, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206; Loew's, Inc. v. Hoyt Management Corp., 83 F.Supp. 863 (D.C.1949); Fireman's Fund Ins. Co. v. Irwin, 82 F.Supp. 180 (D.C.1948); Prudential Ins. Co. of America v. Shawver, 208 F.Supp. 464 (D.C. 1962); Big Lake State Bank v. Morris' Estate, 202 F.Supp. 115 (D.C.1961); Globe & Rutgers Fire Ins. Co. v. Visle, 110 F. Supp. 889 (D.C.1953); Gannon v. American Airlines, 251 F.2d 476 (10 Cir. 1958); Poland v. Atlantis Credit Corporation, 179 F.Supp. 863 (D.C.1960); Geo. H. Jett Drilling Co. v. Tibbits, 230 F.Supp. 58 (D. *765 C.1964); O'Daniel v. Porter, 99 U.S.App. D.C. 398, 240 F.2d 636 (1957).
We have read each of the foregoing authorities. We conclude they do not support Appellant's position. In the first seven cases, the claimants asserted rights arising under agreements with plaintiff in the concursus proceedings or claimed all or part of the deposited funds by either judgment, lien or attachment. In the case at hand, Appellant has no lien, or judgment, neither has Appellant secured an attachment. Appellant merely contends he has threatened to attach or sequester the stake.
Poland v. Atlantis, above, did not involve a determination of claim ranking; it was concerned only with whether interpleader should be allowed at all.
The contest in O'Daniel v. Porter, above, was between the holder of a promissory note secured by collateral mortgage and the attaching creditor of the payee on the same note. We do not consider it authority for holding that a creditor of a stakeholder's creditor may advance an unliquidated claim against the stakeholder's creditor for ranking and payment out of a concursus fund without having secured an attachment or sequestration or presenting evidence of a lien or privilege with respect thereto.
Jett Drilling Co. v. Tibbits, above, dealt with claim ranking in a concursus proceeding. The decision is not entirely clear as to the precise status of each claim; it appears, however, that all claims arose out of the drilling of a single oil well. Claimants therein urged various liens and privileges or preferences. The court distributed the fund according to lien priorities with unsecured creditors being relegated to payment after claims of preferred creditors were discharged. Jett Drilling Co., above, did not involve conflict between the creditor of the stakeholder and the creditors of the stakeholder's creditors, either secured or unsecured, nor was the merits of any claim at issue therein.
Louisiana State Mineral Board v. Albarado, 248 La. 551, 180 So.2d 700, involved exceptional circumstances. Therein the State Mineral Board brought concursus pursuant to LSA-R.S. 30:186, et seq. Approximately $100,000.00 was deposited in court. The court found that approximately 1830 individuals were entitled to share in the fund as heirs of one Francois Zenon Boutte. Over 3,500 persons asserted claims as heirs and about 10 others, including Ulysses Pierrottie, an Attorney-at-Law, intervened asserting claims to the fund. The trial court and court of appeal rejected Pierrottie's claim for fees representing services rendered as attorney in establishing the heirship of claimants and in negotiating the mineral lease which produced the stake. The Supreme Court reversed and allowed Pierrottie to claim $10,000.00 on quantum meruit. We note distinctions between Albarado, above, and the case at bar. In Albarado, the claim was directly associated with the transaction which produced the concursus fund. It does not appear that any claimant objected to Pierrottie asserting his claim. The court therein allowed claimant recovery on purely equitable grounds.
In Phelps v. State et al., La.App., 1 So.2d 806, the receiver for Atlas Pipeline Corporation instituted a concursus by depositing a portion of the accrued 1/8 royalty due under a mineral lease. The stakeholder impleaded the three owners of the lands covered by the lease: The State of Louisiana; Standard Oil Company of Louisiana, and S. J. Harman. The State obtained joinder of the mineral lessee, R. E. Allison. After Allison's joinder, the State asserted claim against the royalty fund on the basis of alleged ownership of the leased lands. As reputed owner, the State claimed ownership of all minerals produced. In rejecting the State's claim predicated on ownership of a 7/8th interest acquired by Allison under Harman's lease, the court stated:

*766 "The money deposited herein regarding which the State of Louisiana was cited to make proof of its claim, came from the 1/8 royalty provided for by the Harman-Allison lease. In establishing ownership of it, appellant would be permitted to attack the titles under which others assert interest therein. Through the assailed reconventional demand, however, it makes claim to and questions Allison's 7/8 working interest under the Harman lease. This interest is entirely foreign to the initiated proceeding, and the funds deposited by plaintiff for distribution constitute no part of it."
Placid Oil Company v. Young et al., La. App., 246 So.2d 306, cited and relied on by the trial court is factually inapposite. Plaintiff in Placid deposited in concursus royalties from a 20 acre tract on which Placid held leases from all alleged owners. Defendants were the Young Group and the Emerson Group. Both groups answered and claimed the royalties on deposit, and asserted ownership of the 20 acres in dispute. In addition, the Emerson Group reconvened claiming ownership of an adjoining 40 acre tract and named Placid and the Young Group defendants in said reconventional demand. On appeal, the judgment of the trial court rejecting the Emerson Group's reconventional demand to establish title to the separate 40 acre tract was affirmed. The demand regarding the 40 acre tract made no claim against the deposit; it sought to establish title to lands not involved in the concursus as originally instituted.
In holding that Appellant may not press his independent claim against BS&W in this proceeding, we do not pass upon the merits of that claim. Appellant is free to litigate the matter in a proper forum.
The judgment of the trial court is affirmed; Appellant Carson Davis is cast with all costs in the trial court and on appeal.
Affirmed.