STOKER, Judge.
This is an appeal from a judgment in a concursus proceeding invoked in a contract dispute. We reverse and vacate the judgment and remand for further proceedings.
FACTS
The litigation involved in this appeal grows out of disputes between a contrac *143 tor, Mid-State Sand & Gravel Co., Inc. (Mid-State), and two of its subcontractors: Tanner Heavy Equipment Co., Inc. (Tanner) and Louisiana Erosion Control, Inc. (LEC). Mid-State itself subcontracted to perform certain work on the DeRidder ByPass, Route LA 3226. Tanner’s subcontract duties included preparing the by-pass slopes for the planting of grass. LEC subcontracted to plant the grass. The two subcontracts with Mid-State were separate and no contractual relations existed between Tanner and LEC.
On June 4, 1985, Mid-State contracted with Tanner to provide labor and equipment for the job and agreed to pay Tanner certain hourly and daily labor rates plus certain weekly and monthly equipment fees. On Tanner’s completion of the job, Mid-State paid Tanner $32,643.10 on December 27, 1987, leaving a balance due on the contract of $21,040.06. Tanner further billed Mid-State $10,818.25 for extra work performed on a landscaping subcontract. Tanner had graded and dressed the slopes of the by-pass for planting grass. However, the grass was not planted timely, requiring Tanner to reprepare the slopes several times between July 29, 1986 and October 7, 1987, at a cost of $10,818.25.
Mid-State refused to pay the balance due, alleging that Tanner had agreed to charge $1.25 per cubic yard for gravel to be hauled from the Self and James pits. Instead, however, Tanner hauled the gravel from the Cravens Pit and the Rainbow pit, charging $2.48 and $1.00 per cubic yard, respectively. This resulted in a charge of $16,159.77 beyond the original contract price of $1.25 per cubic yard. Mid-State also alleged that Tanner breached the contract by failing to load the material into Mid-State’s trucks at Tanner’s cost, thereby causing Mid-State to incur $71,629.09 of extra costs.
Tanner filed this suit against Mid-State to recover the balance owed under the contract to haul gravel and the extra cost incurred for landscape preparation, or $31,-858.31. Mid-State answered with a general denial and filed a reconventional demand against Tanner for $71,629.09.
Mid-State also filed a third party demand against Louisiana Erosion Control, Inc. (LEC). Mid-State had contracted with LEC, on July 1, 1985, to “landscape” the slopes of the by-pass project with grass. Mid-State alleged that LEC should be liable for Tanner’s claim for $10,818.25 of extra costs incurred for repreparing the slopes, since LEC’s untimely fulfillment of its duties under the landscaping contract caused Tanner to incur the extra expense. LEC answered the third party demand with a general denial and also filed a reconven-tional demand, alleging that Mid-State owed it a balance of $11,213.50 under the landscape contract.
Mid-State then converted the litigation into a concursus proceeding. It alleged that it had settled all of its claims with Tanner except the claim for $10,818.25. It admitted that it owed $10,818.25 to Tanner and $11,213.50 to LEC for work performed. Mid-State then deposited $11,213.50 into the registry of the court and prayed that it be dismissed from the suit.
At the hearing on the concursus proceeding, the main issue was whether LEC had performed its work in an untimely manner which caused Tanner to incur $10,818.25 additional expenses in soil preparation. After a trial on the merits, the trial judge held in favor of Tanner, awarding it $10,818.25. LEC was awarded the balance in the registry, $395.25. LEC appeals that judgment.
OPINION
We find that a concursus proceeding was improperly invoked in this case. A fundamental and necessary prerequisite to a concursus proceeding is that there be competing and conflicting claims to the money deposited in the registry of the court. LSA-C.C.P. art. 3651. The primary purpose of concursus is to protect the stakeholder from multiple liability from conflicting claims and from the vexation attending involvement in multiple litigation in which the stakeholder may have no direct interest. In the vast majority of cases the stakeholder is an innocent third party possessing funds or property admittedly belonging to or owned by another, but be *144 ing claimed by two or more other parties asserting conflicting claims thereto. Landry & Passman Realty, Inc. v. Beadle, Swartwood, Wall & Assoc., Inc., 303 So.2d 761 (La.App. 1st Cir.1974), writ ref.’d, 307 So.2d 631 (La.1975). Also, Louisiana Intrastate Gas Corp. v. Muller, 290 So.2d 888 (La.1974).
In a concursus proceeding, the jurisdiction of the court is limited to disposing of the fund on deposit and relieving the stakeholder from further liability to the interpleaded claimants arising out of or as a result of the stakeholder’s ownership or possession of the fund. The interpleaded parties must then establish their respective claims to the fund, following which the claimants are paid in order of priority until the fund is exhausted. Landry & Pass-man Realty, Inc., supra. Concursus contemplates a proceeding which leads to a single judgment adjudicating all issues between the parties. Johnson v. Lemons, 157 So.2d 752 (La.App. 2d Cir.1963): Also, Asian Intern., Ltd. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 435 So.2d 1064 (La.App. 1st Cir.1983).
In the case before us, Mid-State admits that, under their respective contracts, it owed $10,818.25 to Tanner and $11,213.50 to LEC. However, Mid-State’s concursus petition limits that liability to $11,213.50, the amount it owed to LEC.
Mid-State deposited the amount it owed to LEC, $11,213.50, into the court’s registry for Tanner and LEC, placing them in the position of competitors for the fund. Such an action presumed that Mid-State had a right to contribution or indemnity from LEC. The result of Mid-State’s improper pleading of that legal conclusion (LSA-C.C.P. art. 891) is that LEC has been effec-.. tively denied its right to assert a defense to Mid-State’s third party claim.
Also, the concursus proceeding unfairly altered the parties’ burdens of proof. Mid-State effectively avoided its burden of proving its contractual right to indemnity or contribution from LEC and LEC was put in the position of proving that Mid-State’s unproven and conclusory allegations were wrong. We note incidentally that Mid-State’s contract with LEC stipulates liquidated damages for delay but does not seem to provide for contribution or indemnification.
This case simply does not involve conflicting and competing claims between LEC and Tanner, as required for a concursus proceeding. The only thing Tanner and LEC have in common is that they both have contract claims against Mid-State. Whether or not Mid-State has a valid defense to payment of either claim is an issue to be decided in a suit with Mid-State, not in a concursus proceeding between Tanner and LEC. See Lent, Inc. v. Lemel Steel Fabricators, Inc., 340 So.2d 1035 (La.App. 1st Cir.1976), writ denied, 343 So.2d 1075 (La. 1977); Landry & Passman Realty, Inc., supra. A concursus proceeding in this case will not resolve all the issues between the parties since it will not settle the issue of Mid-State’s right to indemnity or contribution from LEC.
CONCLUSION
Therefore, we reverse and vacate the judgment of the trial court and dissolve the concursus proceeding. As a result of this conclusion, there is no need to consider LEC’s assignments of error.
We must remand the case to the trial court for further proceedings. Although the interests of judicial economy would be better served if we could decide the case on the record before us, we cannot do so since Mid-State has not been given an opportunity to present evidence and arguments on its own behalf.
DISPOSITION
The judgment of the trial court is reversed and vacated. The case is remanded for further proceedings in accordance with the law and the views expressed herein. Costs of this appeal are assessed to Mid-State Sand & Gravel Co., Inc.
•REVERSED; VACATED; REMANDED.