The State of Louisiana is appealing in this interpleader proceeding from a judgment of the district court which ordered the striking of its reconventional demand urged against R.E. Allison.
The sustained motion to strike was tried on the pleadings and attached documents; and it is considered in that manner by us.
Appellant claims the ownership of the minerals in and under all that part of the Southwest Quarter of the Southwest Quarter of Section 34, Township 18 North, Range 14 West, Caddo Parish, Louisiana, lying below the 172' contour line of Cross Lake and containing 14.83 acres. Above the contour line, in the mentioned quarter-quarter section, is a 24.42-acre tract, assertedly owned in fee by S.J. Harman, and also a .75-acre tract to which the Standard Oil Company of Louisiana claims the fee title.
Harman, under date of June 6, 1938, executed an oil, gas and mineral lease covering his 24.42-acre tract in favor of R.E. Allison, the agreement providing for the payment to the lessor of a royalty of 1/8 of the oil produced and saved from the land. Pursuant to the terms and conditions of the lease, and on the specific tract that it affected, the lessee drilled and completed a producing oil well.
On March 1, 1939, the Commissioner of Conservation of Louisiana promulgated Order No. 13, announcing special rules and regulations relating to the production of oil from the Shreveport Oil Field, in which the above well is located. Provided for therein was the establishing of a drilling pattern based on one well to each unit of 40 acres of the producing area, and a requirement for the pooling of small tracts.
The order also recited that: "Any minority acreage which is not pooled shall be entitled to its pro rata share of one-eighth of the production in the proportion which such minority acreage (bears) to the total acreage in the drilling unit."
It further stated: "When any forty-acre governmental subdivision is designated as a drilling unit, and such subdivision includes any part of Cross Lake or other water bottom, title to the mineral rights of which is vested in the State of Louisiana, that part of the water bottom lying within the said drilling unit shall be a part of the drilling unit, and the State of Louisiana shall be entitled to its pro rata share of one-eighth of the production from the drilling unit in such proportion as the acreage owned by the State within the drilling unit bears to the total acreage of the unit."
The above-described properties of the State of Louisiana, S.J. Harman and the Standard Oil Company of Louisiana were all in the same 40-acre governmental subdivision and comprised a drilling unit.
Subsequent to the issuance of the mentioned order, and as a result thereof, this proceeding was initiated. Plaintiff alleges that the Atlas Pipeline Corporation in receivership purchased, since May 27, 1939, the oil runs from the aforementioned S.J. Harmon lease and well; that the Louisiana Department of Conservation has requested him "to hold for the benefit of the State of Louisiana 1483/4000 of the royalty accruing under the lease described in Paragraph 1 hereof, pursuant to the rules and regulations as established by the Department of Conservation for the Shreveport Field"; and that he has held in suspense 1558/4000 of the 1/8 royalty under said lease, covering the period from May 27, 1939, to and including August 31, 1939, and amounting to $955.65, pending the clarification of the claims of the State of Louisiana and the Standard Oil Company of Louisiana thereto.
The named sum was deposited in the Registry of the District Court, and the State of Louisiana, S.J. Harman and the Standard Oil Company of Louisiana were cited to answer and assert their claims to the funds.
Thereafter numerous pleadings were filed by the parties to whom citations issued. However, reference is made hereinafter only to those that are pertinent to a consideration of the issue presented by the appeal.
An exception tendered to the petition and urged by the State of Louisiana was one of nonjoinder of parties defendant. It was grounded on the contention that R.E. Allison, who was not originally cited, is a necessary and indispensable party to the suit. The district court sustained this exception and ordered plaintiff to amend the petition within ten days. There was a compliance with this order. *Page 808 
Following the sustaining of the exception of nonjoinder, the State of Louisiana, through its appropriate agencies, filed an answer in which its alleged ownership of the minerals in and under the above-described 14.83-acre tract of land is admitted. Further, and by way of reconvention, it avers that it is entitled to the proportion of the proceeds of the oil accruing under the Harman-Allison lease that its acreage bears to the 40-acre drilling unit, in other words to 1483/4000 of all (8/8) of the oil produced, and is not limited to 1483/4000 of the 1/8 royalty stipulated to be paid under the lease agreement. In this connection, the charge is made that the mentioned order No. 13, dated March 1, 1939, in so far as it "attempted and purported to limit the right of the State of Louisiana to recover only a pro rata share of 1/8th only of the production from the drilling unit, is null and void and ultra vires of the powers of the Commissioner of Conservation of the State of Louisiana."
The prayer of the State is that it be recognized as the owner of said 14.83 acres, and "as such entitled to 1483/4000ths of all of the oil produced from said property under the lease described in plaintiff's petition herein."
Allison, the lessee, moved to strike such reconventional demand; and it is from the decree sustaining his motion that this appeal is being prosecuted.
The judgment, in our opinion, is correct.
Authority for an interpleader proceeding, to which plaintiff resorted herein, is found in Act No. 123 of 1922. This statute authorizes a person, corporation or other entity, that holds money claimed by two or more persons, to deposit it in the registry of a court of proper jurisdiction and to cause the conflicting claimants to establish their ownership thereto. By so doing the depositor is relieved of all liability to all persons properly cited for the payment of the money. The remedy thus afforded is equitable in nature, and wide latitude is permitted the respective litigants in proving title to the deposited funds. The theory underlying it is that the dispute concerning the funds should be litigated among the conflicting claimants without involving the shareholder.
The money deposited herein, regarding which the State of Louisiana was cited to make proof of its claim, came from the 1/8 royalty provided for by the Harman-Allison lease. In establishing ownership of it, appellant would be permitted to attack the titles under which others assert interests therein. Through the assailed reconventional demand, however, it makes claim to and questions Allison's 7/8 working interest under the Harman lease. This interest is entirely foreign to the initiated proceeding, and the funds deposited by plaintiff for distribution constitute no part of it. Furthermore, it may be said that the attempted demand in reconvention does not comply with the requirement of Code of Practice, Article 375, in that it is not necessarily connected with and incidental to the main action.
The case of United Gas Public Service Company v. Eaton 153 So. 702, decided by this court, is relied on by counsel for appellant. Therein reconventional demands urged by some of the cited claimants were permitted so that the validity of the lease under and through which all claimed could be determined, their real and ultimate purpose being the making of proper distribution of the funds that were deposited in the registry of the court by the plaintiff. Clearly the decision is no authority for the position taken by appellant herein.
Appellant's counsel call attention to the proviso contained in Code of Practice, Article 375, mentioned supra, reading that, "* * * when the plaintiff resides out of the State, or in the State, but in a different parish from the defendant, said defendant may institute a demand in reconvention against him for any cause, although such demand be not necessarily connected with, or incidental to the main cause of action * * *"; and they argue that as the domiciles of the agencies representing the state herein are, for official purposes, in East Baton Rouge Parish and in a different parish from that of each of the other litigants, the reconventional demand is properly asserted. The contention and argument are not impressive. Obviously, the quoted proviso contemplates a situation involving a regular suit between a plaintiff and a defendant and is not applicable to a proceeding of this kind.
The judgment is affirmed. *Page 809