YARRUT, Judge.
Plaintiffs-appellees filed these concursus proceedings (consolidated for trial) under LSA-R.S. 13:4811 et seq., and LSA-C.C.P. 4651-4662, to deposit in the Registry of the Court royalties accruing from various oil and gas leases held by them in two producing units, to be relieved of all liability therefor to the parties impleaded (Defendants-Appellants).
One unit is designated as Helis-Shell State Lease 1762, et al., Unit 1; and the *108 other designated as Helis-Shell State Lease 1762, et al., Unit 2; each containing 160 contiguous acres. As to these two units Appellants claim title to all the land area, water bottoms, submerged land, water courses, and/or other area within the Northeast Quarter of Section 19, T. 16 S., R. 16 E., and within the Southeast Quarter of Section 19, T. 16, S., R. 16 E., Plaque-mines Parish, Louisiana.
All Appellants, except Nicholas D. Olivier, have judicially disclaimed any right to any property located within Units Nos. 1 and 2, lying within the Northwest Quarter of Section 20, T. 16 S., R. 16 E., and the Southwest Quarter of Section 20, T. 16 S., R. 16 E. Olivier, however, claims title to that portion of the Southwest Quarter of Section 20, T. 16 S., R. 16 E., lying within either or both of said units.
The royalties involved are due on those portions of the production allocable to those lands located in each respective unit. As to Unit No. 1, Plaintiffs seek to deposit royalty payments attributable to 163/1600ths of unit production from 16.30 of 160 acres. As to Unit No. 2, Plaintiffs allege, on information and belief, that thq conflict affects 75.02 out of the 160-acre unit, as to which they desire to deposit royalty payments on 7502/16,OOO'ths of unit production.
Exceptions of no right or cause of action and non-joinder of the State were referred to the merits by the District Court, and ultimately dismissed. Appellants re-urge the exceptions here, and Appellees contend Appellants abandoned them when agreeing that they be referred to the merits. Pretermitting the question of abandonment of the exception of non-joinder of the State, we find no merit to any of the exceptions,, since the basis of Appellants’ contention is that Appellees failed to deposit all royalties within each of the units, with particular reference to royalties due the State on the water bottoms' in the units, which are not at issue here. In a case, as here, where a unit is involved, and royalty on production is attributable to a part only of the land in the unit, only those entitled to participate in the royalties from the unit and whose right is contested, need be joined.
In Union Producing Company v. Schneider, La.App., 131 So.2d 133, the court entertained a concursus proceeding, and stated that an exception of no cause or right of action was without merit where the exceptor was contending that the stakeholder had joined less than all of the parties in interest. In Phelps v. State, La.App., 1 So.2d 806, it was held that the stakeholder was not required to deposit the entire proceeds from all production from a unit; and, further, that an attack upon the title of claimants as to funds not on deposit is entirely foreign to the initiated proceeding, and the funds deposited therein constitute no part of it.
Since the State is not named as a claimant here, nor facts alleged showing it to be a claimant, all exceptions were properly overruled. The sole question then is the ownership of the land area of Section 19, as both units are a part of the east half of Section 19.
On the merits, the record establishes that Appellant (Willard Curtis) inherited one-half of his father’s share, or one-fourth of the whole of the marital community. His father and mother, Will and Lili Curtis, acquired the property in 1917 from Plaque-mines Land Co., the latter having acquired it from the State.
Appellees claim title through a 1937 tax sale in the name of Will and Lili Curtis, cancelled in 1951 by the State Auditor on the ground the title was in the State (in 1936) under an adjudication in 1919 to the State. No suit was brought to annul the cancellation or quiet the tax title, other than a “protest” recorded in 1952. Appellees claim the 1919 adjudication was void, so the State had no title in 1936; hence, the tax sale to their predecessor was valid. The ground for nullity is that an even earlier adjudication had been made in 1917.
Accordingly, the validity of the 1937 tax sale, as it may be affected by the validity vel *109 non of the two prior adjudications to the State, is the pivotal question here.
A large tract of land, including Section 19, was assessed in 1916 in the name of Plaquemines Land Company. A great portion of this property was dually assessed and the taxes paid. The property was adjudicated to the State on June 23, 1917. By deed dated October 29, 1917, Plaquemines Land Co. sold Section 19, excluding 40 acres, to Will and Lili Curtis. The 1917 adjudication was redeemed on October 9, 1919.
In the meantime, a second adjudication of Section 19 was made on September 13, 1919, for taxes assessed to Will and Lili Curtis in 1918. This adjudication was not redeemed until after the 1937 tax sale. It was redeemed by one of the Appellees here, in the name of the original owners.
The District Court properly narrowed the issue to the validity of the first adjudication in 1917, and applied to it the provisions of the 1921 Constitution; rejected the plea of dual assessment and prior payment on the ground Section 19 was not part of the property dually assessed, and on which the tax had been paid; declared the 1917 adjudication valid; the 1919 adjudication void; the tax sale in 1937 valid; and annulled the cancellation by the State Auditor in 1951 as having been issued in error.
Appellants contend that the 1917 adjudication was void, but, if not, that the 1919 adjudication was not radically null, and the court erred in determining the issue solely on the validity of the first adjudication; that the 1937 sale was absolutely void for lack of assessment; and, if not, the matter should be remanded to prevent an injustice.
All evidence is documentary. The undisputed documentary evidence and the applicable law were fully discussed in the District Judge’s “Reasons for Judgment,” with which we fully agree, and adopt as our own, viz.:
“Basically the cases involve the ownership of certain lands or the mineral or royalty interest in the lands located within the two units. It should be noted that the State of Louisiana was not made a party defendant in either suit. Therefore, title to the water bottoms, or the mineral underlying the water bottoms, is not at issue. As a consequence neither suit involves the full 160 acres comprising the unit. Suit #5128 involves only 16.3 acres out of 160 acres and suit #5129 involves only 75.02 acres out of 160 acres.
“The two units together cover a small portion of SWJ4 of Section' 17, T-16-S, R-16-E, a portion of the SJ4 of the SEJ4 of Section 18, T-16-S, R-16-E, a large portion of the ID/2 of Section 19, T-16-S, R-16-E and a portion of the Wj4 of Section 20, T-16-S, R-16-E.
“Since the issues involved in each of these sections is different we will discuss each section separately.
“As to that portion of Section 17, T-16-S, R-16-E, located in the unit, no claimants were named as party defendant in either suit so we made no attempt to pass upon the title to said Section 17.
“As to Section 18, T-16-S, R-16-E, all of the parties defendant who claimed any interest in said section traced their chain of title to the same common ancestor in title, viz., Plaque-mines Land Co. All parties admit that Plaquemines Land Co. was the owner of said portion of Section 18 in 1929.
“By deed dated September 13, 1929, COB 70 folio 139, Plaquemines Land Co. sold to the Estate of William Ely (the father and ancestor in title of Saidee Ely Hoth) twenty acres being the Sj4 of the SEJ4 of Section 18, T-16-S, R-16-E. All of the other parties defendant, who claim any interest in said Section 18, also allege that they or their ancestors in title received a deed from Plaquemines Land Co. *110 However, each of these deeds was dated and recorded after the deed to the Estate of William Ely. Since, according to the maps on file the Sí/2 of SEJ4 of Section 18 contains only 10.03 acres, Plaquemines Land Co. obviously had nothing left to sell after it sold 20 acres being the S'Já of SE14 of Section 18, T-16 — S, R-16-E. Consequently we gave judgment to Mrs. Saidee Ely Hoth as to the 10,03 acres in Unit 1 in the S}4 of the SE}4 of Section 18, T-16-S, R-16-E.
“As to Section 20, T-16-S, R-16-E:
“Again, to some extent, we have the same facts, that is the same land was sold more than once. Again all claimants to said portion of Section 20 trace their .title to a common ancestor, viz., Plaquemines Land Co. All parties admit that Plaquemines Land Co. was the owner of said portion of Section 20 in 1917. By deed dated October 29, 1917, COB 52, folio 218, Plaquemines Land Co. sold all of Section 20, T-16-S, R-16-E to A. F. Tyler. Obviously Plaquemines Land Co. had nothing more to sell in Section 20, after this sale to A. F. Tyler.
“Two sets of claimants to Section 20, viz, White Estate, Inc., Emmett E. Hall and L. & M. Land & Mineral Corp., Inc. on the one part, and Mrs. Susie Lou Perez Huey, Mrs. Mercedes Mack and John R. Perez, Jr., both claim as successors in title to A. F. Tyler. These parties have compromised their claims so there is no danger of a dispute between them. All of the other claimants to any portion of said Section 20, also allege that either they or their ancestor in title received a deed to a portion of said Section 20 from Plaque-mines Land Co. However, each of these deeds from Plaquemines Land Co. is dated and recorded after the sale by Plaquemines Land Co. to A. F. Tyler. Since A. F.-Tyler acquired all of said Section 20 from Plaquemines Land Co., the Plaquemines Land Co. had nothing left to sell and the deed recorded later transferred no title. Consequently we have given judgment with regard to said Section 20 to White Estate, Inc., Emmett E. Hall, L. & M. Land & Mineral Corp., Inc. and Mrs. Susie Lou Perez Huey, Mrs. Mercedes Perez Mack and John R. Perez, Jr. as their interest appear in their compromise agreement.
“As to Section 19, T-16-S, R-16-E:
“Again a number of the defendant claimants could be eliminated on the same theory, that is, the same land was sold more than once. Again all parties trace their claim of title to the. same common ancestor, viz., Plaquemines Land Co. Again all parties admit that Plaquemines Land Co. owned all of said Section 19 in 1917. By deed dated October 20, 1917, COB 52, folio 172, Plaquemines Land Co. sold all that portion of said Section 19, located in Helis-Shell State Lease 1762, et al, Units Nos. 1 and 2, to Lillian and William Curtis. Two sets of defendants who claim any interest in said Section 19, claim to be successors in title to Lillian and William Curtis. We will discuss those two sets of claimants later.
“As to all of the other parties defendant who claim any portion of said Section 19, they also alleged that they or their ancestors in title received a deed from the said Plaquemines Land Co. However, each of these deeds was dated and recorded after the deed to William and Lillian Curtis. Therefore we have eliminated them from any claim.
“As to the defendants who claim as successors in title to Lillian and William Curtis. There are two sets of claimants, viz., Mrs. Ruth Hazard Stuart, Mrs. Margaret Hazard Filion, William S. Hazard, Theodore.C. Haz- . ard,- Jr., Willard Curtis, Theodore C. *111 Hazard and Nicholas D. Olivier, on the one part, all of whom we will refer to simply as 'CURTIS’ and Mrs. Susie Lou Perez Huey, Mrs. Mercedes Perez Mack and John R. Perez, Jr., all of whom we will refer to simply as ‘PEREZ’.
“The ‘CURTIS’ group are the heirs or assignees of William and Lillian Curtis. The ‘PEREZ’ group are the successors in title to La Grange Realty, Inc.
“The claims of ‘CURTIS’ and ‘PEREZ’ revolves completely around the validity vel non of a tax sale. By tax sale dated September 27, 1937, COB 86, folio 11, ‘600 a. all of Section 19, except 40 acres in T-16-S, R-16-E’ was sold to La Grange Realty, Inc. for the non-payment of taxes assessed for the year 1936 in the name of Lilly & Willy Curtis.
“ ‘PEREZ’ claims this tax sale is a good and valid deed and transferred complete title to La Grange, Inc., their predecessor in title.
“On the other hand ‘CURTIS’ claims this tax sale is invalid and transferred no title.
“ ‘PEREZ’ points out that the tax sale is valid on the face and pleads the Constitutional peremption of five years (Art. X Sec. 11, Const, of 1921).
“On the other hand ‘CURTIS’ claims the tax sale is invalid because in 1936 title to said Section 19 was vested in the State of Louisiana and not subject to assessment for that year. They point out that said Section 19 was adjudicated to the State of Louisiana on September 13, 1919 for the non-payment of the taxes assessed in 1918 in the name of Will & Lilly Curtis. There was no redemption of this adjudication until 1938.
“ ‘PEREZ’ on the other hand then contends that this latter tax adjudication was void, because title to said Section 19, was already vested in the State of Louisiana in 1918 as a result of a prior tax adjudication to the State on June 23, 1917, wherein all of said Section 19, and other property was adjudicated to the State of Louisiana for the non-payment of the taxes assessed for the year 1916 in the name of Plaque-mines Land Co. The State redeemed the property covered by this tax sale on October 9, 1919.
“To put all of these tax sales and redemptions in their chronological order we have this situation:
“(a) Section 19 and other property adjudicated to the State on June 23, 1917, for the non-payment of taxes assessed for the year 1916 in the name of Pla-quemines Land Co.
“(b) Section 19 adjudication to State of Louisiana on September 13, 1919 for non-payment of taxes assessed in 1918 in the name of Will and Lilly Curtis.
“(c) Redemption from State of Louisiana of tax adjudication mentioned in paragraph (a).
“(d) Section 19 sold to La Grange Realty, Inc. on September 27, 1937, for non-payment of taxes assessed for year 1936 in the name of Lilly & Willy Curtis.
“(e) Redemption from State of Louisiana of tax adjudication mentioned in paragraph (b) above.
“If the tax adjudication to the State in 1917 is valid we have this situation.
“(a) From June 23, 1917 to October 9, 1919 title to said Section 19 was in State of Louisiana and not subject to taxation.
“(b) The tax adjudication to the State dated September 13, 1919 for non-payment of 1918 taxes was void since during the entire *112 year 1918 title to said Section 19 was vested in State of Louisiana and not subject to assessment.
“(c) That on October 9, 1919, the date of the redemption from the State of the 1917 adjudication title to said Section 19 was again vested in Will & Lilly Curtis, and subject to assessment, and remained so through 1936. Therefore, the tax sale to La Grange Realty, Inc. on September 27, 1937 was valid.
“Therefore, we must pass upon the validity of the tax adjudication in 1917 for the non-payment of taxes assessed in the year 1916 in the name of Plaque-mines Land Co.
“ 'PEREZ’ of course claims this tax adjudication is valid. ‘CURTIS’ on the other hand claims this adjudication is void.
“ ‘CURTIS’ makes only one contention with regard to the invalidity of this adjudication. It is that part of the property assessed to Plaquemines Land Co. for 1916 was also assessed to some party other than Plaquemines Land Co. There is no contention that any portion of said Section 19 was assessed for 1916 to anyone other than Plaque-mines Land Co.
“We find no evidence in the record of the dual assessments alleged in the ‘CURTIS’ answer, but that fact is immaterial since we have come to the conclusion that unless said Section 19, T-16-S, R-16-E was dually assessed and taxes paid for 1916, that the tax adjudication to the State for the non-payment of the 1916 taxes was valid as to said Section 19, even if it may have been void as to some other property included in said assessment in the name of Plaquemines Land Co.
“Art. X Sec. 11 of the Constitution of 1921 reads as follows:
“ ‘No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six month from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within five years from the date of the recordation of the tax deed, if no notice is given. The fact that taxes were paid on a part of the property sold, prior to the sale thereof, or that part thereof was not subject to taxation, shall not be cause for annulling the sale as to any part thereof on which the taxes for which it was sold were due and unpaid, provided that the provisions hereof shall not affect any pending suit, nor any suit which may be brought within a period of twelve months from the date of the adoption of this Constitution, in which any tax sale is sought to be annulled for any of said causes.’
“Under the provisions of the Constitution since no taxes were paid on any portion of said Section 19, for the year 1916 the'adjudication of said Section 19 to the State on June 23, 1917 was valid.
“It is true that the tax adjudication in question took place prior to the adoption of the Constitution of 1921, however, the Supreme Court in Tillery v. Fuller, 190 La. 586, 182 So. 683 (pp. 701 & 702) specifically stated that the provisions of the Constitution of 1921 must be applied in any suit, brought after 1921, seeking to annul any sale even if the tax sale took place prior to 1921.
“The tax adjudication to the State in 1917 is valid. Therefore the tax adjudication to the State in 1919 is void. It then follows that the tax sale to La Grange Realty, Inc. in 1937 is *113 valid and is protected by the Constitution peremption of five years.
“ ‘CURTIS’ also alleges and relies upon a ‘cancellation’ by L. B. Baynard, Auditor of the State of Louisiana, dated January 9, 1951, COB 150, folio 837, which purports to cancel the tax sale to La Grange Realty, Inc. dated September 27, 1937 and recorded on November 12, 1937.
“Since we have determined that the tax sale to La Grange Realty, Inc. dated September 27, 1937 was valid, we must conclude that the cancellation was void.
“The cancellation was executed by Mr. Baynard without any notice to the tax purchasers. In fact immediately after said cancellation was recorded La Grange Realty, Inc. filed a protest to said cancellation. Further the cancellation was signed more than five years after the recordation of said tax sale. Said tax sale was then protected by the Constitutional peremption of five years.
“We feel that the cancellation was issued in error, and that the State Auditor did not have all of the facts at at the time said cancellation was executed.
“As far as the property involved in this suit is concerned said cancellation dated January 9, 1951, COB 150, folio 837, is void and of no effect.
“For these reasons we gave judgment for Mrs. Susie Lou Perez Huey, Mrs. Mercedes Perez Mack and John R. Perez, Jr. the successors in title to La Grange Realty, Inc. as to those portions of Section 19, T-16-S, R-16-E, in contest.”
In conformity with the above reasons, the District Court rendered judgment in favor of Mrs. Susie Lou Perez Huey, Mrs. Mercedes Perez Mack and John R. Perez, Jr., and against Mrs. Ruth Hazard Stuart, Mrs. Margaret Hazard Filion, William S. Hazard, Theodore C. Hazard, Jr., Willard Curtis, Theodore C. Hazard, .Nicholas D. Olivier, Gustave Noyer, Marie G. Loste, Louis J. Carmadelle, Jr., Mrs. Andrena Baird Duling, Albert Duling, Jr. and John Duling; and further adjudged that Mrs. Susie Lou Perez Huey, Mrs. Mercedes Perez Mack and John R. Perez, Jr., their successors and assigns, to be the owners of the royalty from the minerals produced from Unit No. 2, and allocable to the land set out in the petition (as delineated on the plat annexed thereto) in the proportions fixed in the judgment.
A similar judgment was rendered in favor of Mrs. Susie Lou Perez Huey, Mrs. Mercedes Perez Mack and John R. Perez, Jr., and against Mrs. Ruth Hazard Stuart, et al., recognizing Mrs. Susie Lou Perez Huey, Mrs. Mercedes Perez Mack and John R. Perez, Jr., their successors and assigns, to be the owners in the proportions of an undivided one-third interest to each of all of the royalties from minerals produced from Helis-Shell State Lease 1762, et al., Unit No. 1, and allocable to land as set out in the petition (as delineated on the plat annexed thereto) in certain portions of fractional Section 19 described in said judgment.
For the above and foregoing reasons, the judgment of the District Court in each of the consolidated cases is affirmed; Appellants to pay the costs in both courts.
Affirmed.