HOOD, Judge.
This is a concursus proceeding instituted by Placid Oil Company, in which it seeks a judgment determining the ownership of oil royalties produced from a 20-acre tract of land in Natchitoches Parish. A number of persons were named as defendants. Placid Oil Company previously had obtained valid oil, gas and mineral leases affecting this tract of land from all of the named defendants, and at the time this suit was filed it deposited in the registry of the court all of the accrued royalties from production on that property.
One group of defendants, referred to collectively herein as the “Young Group,” filed appropriate pleadings alleging that they are owners of the 20-acre tract involved and of the royalties and mineral rights relating to it, and claiming ownership of the accrued royalties from production on said tract. They allege that by deed dated May 3, 1934, the land involved here was sold by Thomas H. Emerson, and others, to L. W. Beal, and that the “Young Group” have acquired the ownership of that tract by conveyances from Beal and his assigns.
Another group of defendants, referred to herein as the “Emerson Group,” also filed pleadings claiming ownership of the royalties produced from this 20-acre tract of land. This group, composed of the children and heirs of Thomas H. Emerson, now deceased, allege that the above mentioned deed from Emerson to Beal, dated May 3, 1934, is null and void for a number of reasons, one of which is that the purported sale is a simulation and another is that the description contained in that deed is not sufficient to transfer title. They contend that since the above mentioned deed was invalid, their ancestor, Thomas H. Emerson, was never divested of title to the 20-acre tract, and that they, as his heirs, have acquired ownership of that tract by inheritance from the decedent.
Judgment on the merits was rendered by the trial court rejecting the demands of the “Emerson Group,” and decreeing that the “Young Group” is entitled to the funds which have been deposited by Placid Oil Company. The defendants who compose the Emerson Group have appealed.[1]

Reconventional Demand of Emerson Group

The Emerson Group, in addition to filing an answer claiming ownership of the land and of the royalties from the 20-acre tract, also filed a reconventional demand in which they seek, among other types of relief, a judgment decreeing them to be the owners of a 40-acre tract of land (not involved in this concursus proceeding), and condemning the defendants-in-recon-vention to pay damages to them for slander of title. The defendants named in that reconventional demand are Placid Oil Company and the persons who compose the Young Group. Placid Oil Company filed a motion to strike this reconventional demand, and after a hearing judgment was rendered by the trial court on October 7, 1969, sustaining the motion to strike insofar as it relates to the 40-acre tract which was not involved originally in this con-cursus proceeding.
*308 The Emerson Group, contending that the trial court erred in striking the reconven-tional demand, argues that the purpose of a concursus proceeding is to avoid a multiplicity of actions, and that the rules governing such proceedings should be applied so as to permit “the widest latitude in determining matters between the parties in one proceeding.” The members of that group take the position that they are entitled to file and maintain a reconventional demand in this proceeding claiming title to an adjoining tract of land which also has been leased to Placid Oil Company. In support of that argument they refer us to Rule 22 of the Federal Rules of Civil Procedure, LSA-C.C.P. Art. 4651, 35 Tul.L.Rev. 537, and the cases of Youngblood v. Burke, 43 So.2d 695 (La.App.2d Cir. 1950), and California Company v. Price, 234 La. 338, 99 So.2d 743 (1957).
We agree that the articles of the Louisiana Code of Civil Procedure relating to concursus proceedings should be given a broad application, and that in a case such as this it is necessary to consider and to determine the ownership of the land and the royalty rights relating to that land before the ownership of the accrued royalties can be determined. The reconventional demand filed by the Emerson Group in this case, however, at least insofar as it relates to the 40-acre tract of land, is simply a petitory action and a slander of title suit affecting an entirely separate tract of land which is not involved in this concursus. The issues presented by this concursus proceeding relate solely to the ownership of the royalties which have accrued or which may accrue from production on the 20-acre tract, and it is immaterial to a determination of those issues whether the Emerson Group does or does not own the adjacent 40-acre tract. We find no error in the judgment of the trial court which decreed that the reconventional demand of the Emerson Group be stricken insofar as it relates to the 40-acre tract.
We affirm the judgment rendered by the trial court on October 7, 1969, therefore, and in this proceeding we will consider only those issues which relate to the ownership of the royalties which have accrued or which may accrue from the 20-acre tract which is described or referred to in plaintiff’s petition.
In view of the conclusion which we have reached relative to the reconventional demand filed by the Emerson Group, it is unnecessary for us to consider the additional argument made by plaintiff that since no appeal has been taken from the judgment rendered on October 7, 1969, that judgment has become final and this court is without jurisdiction to review the issues determined by it.

On the Merits

The principal .question presented on the merits is whether the description contained in the deed from Emerson to Beal, dated May 3, 1934, was sufficient to convey title to purchaser. The trial court obviously held that it was, and the Emerson Group contends that it was not.
In the judgment appealed from, the trial judge described the 20-acre tract of land involved in this suit as follows:
“ * * * Southwest one-half of NE !4 of SW of Section 23, Township 11 North, Range 6 West of Natchitoches Parish, Louisiana * *
The evidence shows that on October 2, 1901, Thomas H. Emerson and William M. Lowry entered into a partition agreement, in which they recited that they owned the Northeast Quarter of the Southwest Quarter (NE 14 of SW 14) of Section 23, Township 11 North, Range 6 West, in Natchitoches Parish, Louisiana, and that they desired to effect a partition of said land in the following manner:
“ * * * by a line running diagonally across said Quarter of Quarter Section from the North West Corner to the South East Corner of same as shown on sketch herein below. Said Thomas H. Emerson with the consent and approval *309 of Wm. M. Lowry takes said portion of said quarter of quarter section lying South West of said line and Wm. M. Lowry with the consent of said Thomas H. Emerson takes for his part of said quarter lying North East of said line, to have and to hold said subdivision of said land now and forever. Each warranting title to the other as their actions and that of their heirs or assigns.” (Emphasis added).
On the last page of that partition agreement, and incorporated as a part of it, there is a drawing which purports to be a plat of Section 23. On that plat there appears a straight line drawn diagonally from the Northwest Corner to the Southeast Corner of the Northeast Quarter of the Southwest Quarter of that section. The word “Emerson” is written immediately under and to the left of that diagonal line, and the name “Lowry” is written immediately over and to the right of that line.
All parties concede that Thomas H. Emerson and William M. Lowry jointly owned the Northeast Quarter of the Southwest Quarter of said Section 23 at the time the above described partition agreement was entered into. They also agree that the triangular shaped 20-acre tract of land which Emerson acquired in that agreement was adequately described in the partition agreement.
At the time Thomas H. Emerson acquired the above described property, he was married to Julia M. Lowry Emerson, who later died intestate on February 8, 1914. At her death she left her surviving husband and nine children born of that marriage. One of these children died intestate as a child shortly after her death. Another child, Willie Elbert Emerson, died intestate on October 8, 1933, leaving as his sole survivors his wife, Mrs. Pearl Monroe Emerson, and their three minor children, named Adele, Thelma and James. The last named child died single, childless and intestate in 1952. Mrs. Pearl Monroe Emerson and her two surviving children, whose names now are Mrs. Adele Emerson Taylor and Mrs. Thelma Emerson Harold, are defendants in this suit.
On May 3, 1934, Thomas H. Emerson, his seven surviving major children, and Mrs. Pearl Monroe Emerson, the surviving widow of his deceased son, executed a warranty deed purporting to convey to Lutie W. Beal the following property:
“NW 14 of SW j4 and 20 acres in SW corner of NE 14 of SW J4, all in Section 23 Township 11 North of Range 6 West, together with all the improvements thereon and with all the appurtenences thereto pertaining.”
Shortly thereafter, on July 16, 1934, Mrs. Pearl Monroe Emerson, as tutrix of her three minor children, Adele, Thelma and James Emerson, executed a warranty deed purporting to convey the same property to L. W. Beal. T. H. Emerson, the under-tutor of said minors, joined the tutrix in executing that deed.
Thomas H. Emerson died intestate on October 8, 1943.
On October 5, 1942, L. W. Beal sold this property to D. Crawford Young. Substantially the same description was used in that deed as had been used in the sale from Emerson to Beal in 1934. Young then sold this property, and other lands, to William H. Franklin, Jr., by deed dated December 11, 1961, and in that deed Young retained one-half the mineral rights. A part of the property conveyed in that transaction was described in the deed as follows:
“ * *■ * SW y2 of NE 14 of SW 14— diagonal line, in Section 23, Township 11 North, Range 6 West, Natchitoches Parish, Louisiana.” (Emphasis added).
On February 28, 1963, and on March 1, 1963, Placid Oil Company obtained oil, gas and mineral leases from Franklin and Young covering this 20-acre tract. Thereafter Franklin sold a royalty interest in the property to Jack Strong, who later assigned that interest to Clyde H. *310 Hall, S. H. Killingsworth and W. T. Crowder, Jr. In each of the above mentioned leases, royalty deeds or assignments, the 20-acre tract involved here was described as being the “SW }4 of NE- 14 of SW 14.” of Section 23. All of the above named assignees of Young and Franklin, except Strong, have been made defendants in this suit and are members of the “Young Group.”
The Emerson Group contends that the description contained in the deed from Thomas H. Emerson to Beal, dated May 3, 1934, and the description in the deed from Mrs. Pearl Monroe Emerson to Beal, dated July 16, 1934, is so vague, incomplete, indefinite and inadequate that it is impossible from that description to locate and identify the property which the deed purports to convey. They argue that it is impossible to determine from the four corners of either instrument whether the property conveyed is in the shape of a square, a circle, a triangle, a rectangle, a trapezoid or any other shape, and that since the property which those deeds purport to convey cannot be located the deeds are null and void. To support that argument they rely largely on the cases of Daigle v. Calcasieu Nat. Bank in Lake Charles, 200 La. 1006, 9 So.2d 394 (1942); Hargrove v. Hodge, 121 So. 224 (La.App. 2d Cir. 1928) ; Cattle Farms, Inc. v. Abercrombie, 211 So.2d 354 (La.App. 4th Cir. 1968); and Brock v. E. McIlhenny’s Son, 136 La. 903, 67 So. 951 (1915).
The Young Group contends primarily that in both of the 1934 deeds, by which Beal acquired title to the property, the description is clear and that the property conveyed by those deeds can be located with exactness from the description alone. They argue that the description which reads “20 acres in SW ■Corner” of a 40-acre tract of land must be interpreted as meaning that the property sold is a triangular shaped piece of land, and that the northeast boundary is a line drawn diagonally from the northwest corner to the southeast corner of the original 40-acre tract. They maintain that a description which reads “SW J4 of NE 14 of SW )4” also is clear and must be interpreted in the same manner.
These defendants, the Young Group, contend alternatively that if the description in these deeds should be held to be faulty, the deeds nevertheless are valid because the property described therein can be located by the use of the “extrinsic evidence” which was produced at the trial.
The settled rule is that in the execution of deeds the intentions of the parties must be gathered from an inspection of the instrument itself, without the aid of extrinsic evidence, if their intentions can be thus ascertained. If the language used in the deed or in the description is so ambiguous as to leave the mind in doubt as to what the parties intended, however, extrinsic evidence may be resorted to as an aid in construction. Plaquemines Oil & Development Company v. State, 208 La. 425, 23 So.2d 171 (1945); Holloway Gravel Co. v. McKowen, 200 La. 917, 9 So.2d 228 (1942); Rudman v. Dupuis, 206 La. 1061, 20 So.2d 363 (1945).
The description of property contained in a deed must be liberally construed to sustain rather than to defeat the conveyance. Emerson v. Cotton, 209 La. 1003, 26 So.2d 16 (1946). The seller is bound to explain himself clearly respecting the extent of his obligations, and any obscure or ambiguous clause is to be construed against him. LSA-C.C. Art. 2474. When there is an error, ambiguity or obscurity in the description of property in a deed, the construction of the language used must be in favor of the vendee and against, the vendor as to the extent of the property conveyed. Wood v. Klause, 175 So.2d 401 (La.App.4th Cir. 1965); Union Bank v. Roy, 248 La. 801, 182 So.2d 319 (1965); Hulin v. Hale, 137 So.2d 709 (La.App.3 Cir. 1962).
Although we find the principal argument of the Young Group that the property can be located from the description con *311 tained in the above mentioned deeds to be highly persuasive, we have decided to base our decision on the alternate ground urged by that group, that is, that the property can be located and determined with the aid of the “extrinsic evidence” which was introduced at the trial.
The “extrinsic evidence” which was produced shows that at the time the deed from Thomas H. Emerson to Beal was executed in 1934, the only property which Emerson owned in the Northeast Quarter of the Southwest Quarter of Section 23 was the triangular shaped 20-acre tract of land which he acquired by the 1901 partition agreement. The sellers and the purchaser were charged with knowledge of the fact, as shown by the public records, that the only property which could have been conveyed by the 1934 deed was a triangular shaped 20-acre tract, located south and west of a diagonal line running from the northwest corner to the southeast corner of the above mentioned quarter of quarter section. That circumstance, plus the fact that the 1934 deed described the property being conveyed as “20 acres in SW corner” of that 40-acre tract, convinces us that Emerson intended to convey to Beal and Beal intended to purchase from Emerson, the same triangular shaped 20-acre tract which Emerson had acquired by the earlier partition agreement. The same reasoning and conclusion applies, of course, to the deed from Mrs. Pearl Monroe Emerson, as tutrix, to Beal, dated July 16, 1934.
The case of Brock v. E. Mcllhenny’s Son, supra, relied on by the Emerson Group, is not applicable here because it relates to the description contained in a tax sale. The other three cases relied on by that group, and cited above, involved questions as to whether the descriptions contained in certain deeds were sufficient to serve as notice to third party purchasers under the public records doctrine, as set out in McDuffy v. Walker, 125 La. 152, 51 So. 100 (1910). No such question is presented in the instant suit. Although the requirement that the description in a deed be clear and exact are more rigid where the public records doctrine is involved than they are in a case such as this, we believe the description which was used in the two 1934 deeds by which Beal acquired the property involved here are adequate to satisfy even those requirements.
In White v. Phillips Petroleum Company, 232 So.2d 83 (La.App.3 Cir. 1970), for instance, we held that a deed was valid and that it served as adequate notice to a third party purchaser where the property conveyed was described as being one acre in the southeast corner of a 20-arpent tract of land. Even though the description contained in that deed was vague, we concluded that the deed satisfied the requirements of the public records doctrine because the one acre tract therein described could be located and determined from “extrinsic evidence.” In that case we said:
“The rule here applicable is that if the description is vague or misleading, it is nevertheless susceptible of conveyance if the property intended to be conveyed by the parties can be ascertained with certainty by the aid of such extrinsic evidence as is admissible under the rules of evidence. White v. Ouachita Natural Gas Co., 177 La. 1052, 150 So. 15 (1933); Snelling v. Adair, 196 La. 624, 199 So. 782 (1940); and Knapp v. Jefferson-Plaquemines Drainage Dist., 224 La. 105, 68 So.2d 774 (1953). See also the numerous cases cited in these opinions.
‡ ‡ >j< %
“The description (of one acre located in the southeast corner of a 20 arpent tract, more or less, measuring 2Y2 ar-pents by 8 arpents, more or less, and bounded south and east by the named property owners on the south and east, and north and west by vendor, the owner of the remainder of the twenty ar-pent tract) is vague, but not so vague *312 or erroneous as those held valid in the cited cases.
“The extrinsic evidence admissible under the rules of evidence, proved that the one acre conveyed to plaintiffs’ ancestor in title was in the shape of a square.”
Substantially the same rule was applied by our Supreme Court in White v. Ouachita Natural Gas Company, 177 La. 1052, 150 So. 15 (1933), in which the court stated:
“We think the description was sufficient. Tt suffices if the description be “such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary.” ’ Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489, 492.
“Therefore, whilst an unrecorded deed can have no effect whatever as to third persons, the same is not true where the deed is recorded but contains only an inaccurate or faulty description of the property but not so inaccurate or faulty as to be actually misleading. Hence when the only description in a mortgage was ‘one large property or tract at the corner of Orleans and Bourbon Streets’ without any other boundaries given, this was held sufficient to put a purchaser on his guard. Roberts v. Bauer, 35 La. Ann. 453, citing City Bank v. Denham, 7 Rob. 39, and Ells v. Sims, 2 La.Ann. [251,] 253. See, also, Lee v. Long, 166 La. 1084, 118 So. 320.”
Our conclusion is that the description contained in the deed from Thomas H. Emerson to Beal, dated May 3, 1934, and the description in the deed from Mrs. Pearl Monroe Emerson to Beal, dated July 16, 1934, are sufficient to enable the property therein described to be located and identified and that the deeds thus are valid.
The Emerson Group contends, alternatively, that the deed from Thomas H. Emerson to Beal, dated May 3, 1934, was a simulation and that it thus is null and void. They contend that the seven major children of Thomas H. Emerson who signed one of the above mentioned deeds, and Mrs. Pearl Monroe Emerson, who signed the other as tutrix, received no consideration for those sales, and that they simply signed the deeds because Thomas H. Emerson requested that they do so. Mrs. Emerson and one other vendee who signed the first such deed testified, in effect, that they signed it without reading the document, and that the transaction was a simulation in that it was an attempt to disguise a donation of the property to Thomas H. Emerson by making it appear as though it were a sale to L. W. Beal.
The deed from Thomas H. Emerson and his children to Beal, dated May 3, 1934, was a credit sale. The document recites that the property was sold for a price of $400.00. Of this amount $150.00 was paid in cash, and the purchaser, Beal, executed a promissory note for $250.00, payable monthly as evidence of his indebtedness for the remaining balance. This note was secured by a mortgage on the subject property. There is nothing in the record which tends to show that the full purchase: .price- was not paid by the purchaser, at least to Thomas H. Emerson, one of the vendors, and we conclude that the price was paid. The price constituted a serious consideration, especially in view of the fact that the sale occurred during a period of great economic depression. Beal took possession of the property after the sale, and no one contested his right to do so from the date of that sale in 1934 until this suit was instituted in 1967.
*313 We think the evidence fails to show that the two transactions which occurred in 1934, both of which purported to convey the subject property to Beal, were simulations or were donations in disguise. A serious consideration was paid for the property, and we conclude that the sales were made in good faith and are valid.
We have considered the argument of the Emerson Group that once the question of simulation is raised and suspicious circumstances are shown, the burden then shifts to the opposing parties to show that the transfer was genuine. We believe, however, that the evidence in the instant suit fails to show suspicious circumstances sufficient to create a presumption that the sale was a simulation and that the burden of proof thus did not shift to the Young Group to prove that the sale was valid.
Our conclusion is that the deed from Thomas H. Emerson, and others, to L. W. Beal, dated May 3, 1934, and the deed from Mrs. Pearl Monroe Emerson, as tutrix of her minor children, to Beal, dated July 16, 1934, are valid, and that title to the 20-acre tract involved in this con-cursáis proceeding passed to Beal by virtue of those deeds. The Young Group, as assignees of Beal, are thus the sole owners of the royalties produced from that 20-acre tract. We conclude, therefore, that the trial judge did not err in recognizing the Young Group as owners of those royalties, and in directing the Clerk of Court to pay the funds deposited by Placid Oil Company to the members of that group.
In view of the conclusions which we have reached on the above mentioned issues, it is unnecessary for us to consider the pleas of prescription and the exceptions of res judicata which were filed and argued by plaintiff and the Young Group.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to the appellants, who constitute the Emerson Group.
Affirmed.

. The suspensive appeal taken by the Emerson Group was dismissed, but it was maintained as a devolutive appeal. Placid Oil Company v. Young, 241 So.2d 804 (La.App. 3 Cir. 1970).