346 So.2d 1304 (1977)
DAMSON OIL CORP. et al., Plaintiffs-Appellees,
v.
Larry A. SARVER et al., Defendants-Appellants.
No. 5993.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1977.
Rehearing Denied June 24, 1977.
*1305 Pugh, Buatt, Landry & Pugh by John F. Craton, Crowley, for defendants-appellants.
Bailey & Hollier by W. C. Hollier, Lafayette, Edwards Stefanski & Barousse by Homer E. Barousse, Jr., Crowley, for plaintiffs-appellees.
Hugh E. Brunson, Crowley, for defendants-appellees.
Before WATSON, FORET and HEARD, JJ.
FORET, Judge.
This is a concursus action filed by Damson Oil Corporation, et al., hereinafter referred to as "Damson", pursuant to Article 4651 et seq. of the Louisiana Code of Civil Procedure, to have determined the ownership of unit royalties allocable to a canal strip consisting of the western fifty (50') feet of the Northeast Quarter (NE 1/4) of Section Twenty-One (21), Township Ten South (T-10-S), Range One East (R-1-E), Louisiana Meridian, Acadia Parish, Louisiana.
Impleaded as parties defendant are Larry A. Sarver, et als., hereinafter referred to as "Sarver", on the one hand, and Louisiana Irrigation and Mill Co., hereinafter referred to as "Limco", on the other hand, both of whom claim exclusive ownership of this canal strip.
On April 1, 1898, George Ferre, who then owned the whole of the Northeast Quarter of Section Twenty-One (21), executed an instrument in the form of a cash deed in favor of Roller Canal Company, Ltd., covering and affecting the western fifty (50') feet of this quarter section. A copy of the said deed appears in the record. Sarver, et al. have succeeded by mesne conveyance to all rights of George Ferre in this canal strip. They claim that the deed of April 1, 1898, merely conveyed a servitude for canal purposes, with the result that they are the exclusive surface and mineral owners of this canal strip. Limco has succeeded by mesne conveyance to all rights of Roller Canal Company, Ltd. in this canal strip. It claims that the deed of April 1, 1898, conveyed full ownership, with the result that it is the exclusive surface and mineral owner of this canal strip.
Both sets of adverse claimants granted separate oil and gas leases to Damson covering the canal strip in controversy. The lease covering the interest of Sarver, et al. provides for a one-sixth (1/6) lease royalty, which could be deposited in concursus pending determination of the lessor's title. The Limco lease provides for a one-fourth (1/4) lease royalty, which is required to be paid to Limco irrespective of adverse claims.
The deposit accompanying the petition in concursus, and the monthly deposits made *1306 thereafter, included the full one-sixth (1/6) lease royalty provided for in the Sarver lease. However, those deposits included no part of the one-fourth (1/4) lease royalty provided for in the Limco lease, since the Limco lease royalty has at all times been paid directly to Limco.
On June 14, 1974, Limco filed an Exception of No Right or Cause of Action to the concursus proceedings on the grounds that it had no claim to the fund on deposit, and since the one-fourth (1/4) lease royalty was currently being paid to Limco, use of the concursus procedure by Damson was improper. Following a hearing, this exception was overruled by the district court, and Limco's application to the Third Circuit Court of Appeal for supervisory writs to review that interlocutory ruling was denied on December 3, 1974. Following trial on the merits, the district court granted judgment in favor of Sarver, et al., decreeing them to be the owners of the canal strip here involved, and ordering the clerk to turn over to them all funds on deposit. Limco timely applied for and was granted a suspensive appeal from the judgment so rendered, and the matter is now before us on appeal.
Two issues are presented for this Court to review: (1) the propriety of the concursus proceeding, and Limco being made a party thereto; and (2) assuming that Limco is a proper party to the concursus proceeding, a determination of the correctness of the trial court judgment in declaring Sarver, et al. owners of the canal strip.

PROPRIETY OF CONCURSUS PROCEEDING
The legal issue raised by Limco's Exception of No Cause or Right of Action is addressed to Damson's right to provoke a concursus proceeding to have the question of disputed ownership of the canal strip judicially settled as affected by the fact that Limco was currently being paid its lease royalty, pending judicial determination of title, because of an express lease provision.
Limco cites and relies upon Transo Investment Corp. v. Oakley, 37 So.2d 560 (La. App. 2 Cir. 1948) as authority for the proposition that use of concursus procedure here was improper.
Transo involved a concursus proceeding brought under Act 123 of 1922, which was later incorporated into Louisiana Revised Statute 13:4811 et seq., now since repealed. That statute was a codification of common-law interpleader, and imposed numerous restrictions on the use of concursus, the chief among which was the requirement that the remedy was available only to a stakeholder. Stated differently, use of the concursus action under the old statute was limited to a situation where the only issue before the court was which of rival claimantsas between themselveswas entitled to the funds on deposit. Limco's position might have some merit had the present concursus action been filed under La.R.S. 13:4811 et seq., as interpreted in Transo. However this action is brought by Damson under Articles 4651 et seq. of the Louisiana Code of Civil Procedure. Article 4651 of the Code of Civil Procedure provides as follows:
"A concursus proceeding is one in which two or more persons having competing or conflicting claims to money, property, or mortgages or privileges on property are impleaded and required to assert their respective claims contradictorily against all other parties to the proceeding."
Article 4652 provides:
"Persons having competing or conflicting claims may be impleaded in a concursus proceeding even though the person against whom the claims are asserted denies liability in whole or in part to any and all of the claimants, and whether or not their claims, or the titles on which the claims depend, have a common origin, or are identical or independent of each other. . ."
The Louisiana Code of Civil Procedure worked a number of significant changes in the concursus procedure. Among the chief changes is that the remedy is no longer limited to a mere stakeholder, or to an *1307 obligor who admits his indebtedness but does not know to whom a fund in his hands belongs, as was the case under the old statute involving Transo.
The redactors of the Louisiana Code of Civil Procedure had this to say under Article 4652:
"Under the first paragraph of [Art. 4652], the remedy is no longer limited to a stakeholder, or to an obligor who admits his indebtedness but does not know to whom a fund in his hands should be distributed. The remedy may now be used not only to prevent multiple liability, but to prevent multiple litigation, and thus may be used by a person against whom multiple claims are asserted, although liability on some or all of these claims is denied."
Limco's exception is based on its contention that it does not claim the fund on deposit, and that therefore Damson's petition does not state a cause or right of action. However, alternatively, Limco does claim ownership of the real estate involved, and this fact brings the situation precisely within the statutory definition of a concursus proceeding as one in which two or more persons having competing or conflicting claims to property are impleaded and required to assert their respective claims contradictorily against all other parties to the proceeding. Article 4651, La.Code of Civil Procedure.
It has been held that the articles governing concursus suits should be construed liberally and given a broad application. Placid Oil Co. v. Young, 246 So.2d 306 (La.App. 3 Cir. 1971). The very purpose of a concursus action is to avoid a multiplicity of suits by providing for a single judgment which will finally adjudicate all issues between the contestants. Johnson v. Lemons, 157 So.2d 752 (La.App. 2 Cir. 1963).
Although Limco claims that it is not interested in the concursus proceeding, we surmise that the only reason for this contention is that it is presently drawing a one-fourth (1/4) royalty interest of the minerals produced under the said property in dispute, and that therefore Limco has nothing to gain by the title to the property being (as between Limco and Sarver) judicially determined in a concursus proceeding.
Alternatively, Limco asserts ownership to the canal strip in question. We are of the opinion that Limco's interpretation of concursus proceedings under the Louisiana Code of Civil Procedure is too narrow a view, and we agree with the trial court's judgment overruling Limco's exception.[1]

OWNERSHIP OF THE PROPERTY
The trial judge concluded that as between Limco and Sarver, et al., the latter had better fee title to the property than the former and handed down excellent reasons for his conclusion, and we take the liberty to quote therefrom:
"The property in question is a strip of land in Acadia Parish being used for irrigation canal purposes and the parcel of land emanates from one George Ferre, who in the year 1898 conveyed the strip to Roller Canal Company, predecessor of one of the claimants, Louisiana Irrigation  Mill Company. The instrument between George Ferre and Roller Canal Company provided that Ferre did "grant, bargain, sell, assign, convey, set over and deliver unto Roller Canal Company" the following strip of land: "The Northeast Quarter of Section 21, Township 10 South, Range 1 East, Louisiana Meridian. Said strip of land hereby conveyed being 50' wide and extending from the North to the South line of the said quarter section and adjoining the West line of said quarter section."
"The consideration recited as follows: "One Dollar" and "The building and operating on said land an irrigating canal, said strip of land to revert to vendor, his *1308 heirs or assigns, in case the same is not used as a canal right-of-way for a term of three years".
"Since the conveyance from George Ferre to Roller Canal Company the land in question has been continuously used for irrigation purposes. This Court must decide whether the instrument in question conveyed a full fee ownership or whether it conveyed a servitude of right-of-way to the canal company and it's successors.
"Sohio Petroleum Company vs. Hebert, (La.App.), 146 So.2d 530, held that the conveyance of land with a reservation of a right-of-way could mean that either title or servitude had been reserved, depending on the language of the document and the circumstances surrounding the transfer taken as a whole. See also Welsh Southern Oil Company vs. Scurlock Oil Company, (La.App.), 210 [201] So.2d 376. It has been held that if the term right-of-way is used it usually means that only a servitude is conveyed unless the intent of the parties indicates the contrary. The instrument before the Court uses terms normally associated with sales in all instances except in the consideration clause of the contract. There it provides for a reversion of the strip of land to the vendor in case the same is not used as a canal right-of-way for a term of 3 years.
"Several factors must be considered in determining the intent of the parties: (1) Consideration: Consideration is described as "One Dollar" and the building of the canal which would serve to irrigate vendor's land. While undoubtedly, as argued by counsel for Louisiana Irrigation  Mill Company, the construction of the canal was an expensive undertaking and while it did in fact favor plaintiff's land by irrigating the same for rice production, yet it seems likely to this Court that had the parties intended a sale of the fee a much larger sum than One Dollar would have been recited as a consideration for the sale.
"(2) Exact measures were given: The Court in the Sohio Case felt that if exact measurements were given this would constitute a plus factor in finding that a sale had taken place. In this case exact measurements for the location of the canal were given but this Court feels that it is not a strong factor since the fact that measurements were available for determination of the location of a right-of-way could just as well have motivated the parties to include them in the contract.
"(3) A need for full ownership: The canal company needed a strip of land on which to build their canal. This need could have simply been served by acquisition of a servitude of right-of-way. It is unlikely that they would have bought the strip when a right-of-way would have sufficed for their purposes.
"(4) Assessments and taxes: This Court finds a very important consideration to be given in this matter is the fact that since before the execution of the contract in question the property has been assessed to and the taxes have been paid by George Ferre and his successors in title. This factor strongly points to the finding that the instrument conveyed a mere right-of-way and not full ownership in the canal company.
"(5) Purpose: The Court finds that the instrument was executed for a specific and limited purpose, namely to provide a right-of-way for the Roller Canal Company. If the land were not used for that purpose for 3 successive years it would then revert back to the vendor and its successors in title without any action having to be taken on their part.
"(6) Perpetuity: The Court feels that perpetuity is a factor of little importance since servitudes may be granted in perpetuity as well as for limited periods of time. While the Court in Sohio felt that a grant in perpetuity would favor finding an intent to sell rather than grant a servitude, in the instant case the rights granted are not in perpetuity but only so long as the land continues to be used as a canal.
"(7) Treatment of the property by the parties: Both sets of claimants granted mineral leases covering the property in question. It is important to note here *1309 that Louisiana Irrigation & Mill Company's lease to Frank's Petroleum, Inc. contains a clause acknowledging that there may be a dispute as to ownership of the strip and providing for payments to Louisiana Irrigation & Mill Company regardless of actual ownership. Secondly, an examination of the transfer of the assets from Roller Canal Company to LIMCO reveals the following language, "Strips of land owned, used, occupied by and in possession of Roller as canal rights-of-way." This language indicates that in the eyes of Louisiana Irrigation & Mill Company it did not possess the land as owner but merely had a right-of-way upon which to build the canal. Again the assessment and payment of taxes enters the picture as a real factor in determining who the parties felt owned the land in question.
"For the foregoing reasons it is the opinion of this Court that the strip of land in question is owned by the successors in title of George Ferre and that the Canal Company and its successors in title possess merely a right-of-way on the property in question.
"Accordingly, the Court will find the fee of the land in question to be owned by defendant, Larry A. Sarver, and the minerals to be owned by Sarver and his predecessor in title in accordance with the stipulation which was entered into the record between those two claimants as to the proceeds of the funds in the Registry of the Court."
For the foregoing reasons, we affirm the judgment of the trial court which is dispositive of the issues involved in this appeal.
All costs of this appeal are assessed against the mass deposited in the Registry of the Court.
AFFIRMED.
WATSON, J., concurs in the result.
NOTES
[1] See also Austral Oil Co., Inc. v. Milliken & Farwell, Inc., 307 So.2d 377 (La.App. 1 Cir. 1974), writ denied, 310 So.2d 642 (La.); La. Intrastate Gas Corp. v. Muller, 290 So.2d 888 (La. 1974); Pogue v. Ray, 272 So.2d 454 (La. App. 2 Cir. 1973); Placid Oil Co. v. Young, 246 So.2d 306 (La.App. 3 Cir. 1971), writ refused, 259 La. 56, 249 So.2d 201; Helis' Est. v. Hoth, 150 So.2d 106 (La.App. 4 Cir. 1963); Phelps v. State et al., 1 So.2d 806 (La.App. 2 Cir. 1941).