# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**17-965**

**NOLES-FRYE REALTY (NAI LATTER & BLUM)**

**VERSUS**

**HOLLY DIXON, ET AL**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 254,605
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Marc T. Amy, and John E. Conery, Judges.

**REVERSED AND RENDERED.**

**William M. Ford**
**Post Office Box 12424**
**Alexandria, LA  71315-2424**
**(318) 442-8899**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Holly Dixon**
    **Sandra Damico**
    **Diana Ratner**
    **Jayn Robison**

**Christie C. Wood**
**Wilson & Wilson**
**Post Office Box 1346**
**Jena, LA   71342**
**(318) 992-2104**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Andrea Talbot**
    **Adrian Talbot**

**Michael S. Ricci**
**101 W. Robert E. Lee Boulevard, Suite 400**
**New Orleans, LA   70124**
**(504) 304-7115**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Noles-Frye Realty (NAI LATTER & BLUM)**

**AMY, Judge.**

Following the failure of a purchase agreement, a realty company commenced this concursus proceeding so that the sellers and the purported buyer could advance their claims of ownership to the underlying deposit. Following a hearing, the trial court ruled in favor of the sellers after observing that, although the buyer was credible in her testimony regarding her inability to secure financing for the home, she failed to produce corroborating documentary or testimonial evidence in that regard. The buyer appeals. Following review, we reverse and render.

## Factual and Procedural Background

Noles-Frye Realty filed a Petition for Concursus instituting this matter in December 2015, noting that it "became aware that a dispute existed as to the ownership or entitlement of funds, held in escrow as a result of a real estate transaction." The parties to the underlying transaction, a September 2015 Louisiana Residential Agreement to Buy or Sell ("the Agreement"), were named as defendants in the proceeding. The record indicates by the Agreement, Andrea Soltau-Talbot ("the Buyer"),[1] sought to purchase residential property in Alexandria offered for sale by Holly Dixon, Sandra Damico, Diane Ratner, and Jayn Robison (hereinafter "the Sellers").[2] Although the closing date was twice extended, the sale was not completed.

Both the Buyer and the Sellers claimed entitlement to the $30,000.00 deposit provided by the Buyer pursuant to the Agreement. Each focused on the initial

---

[1] Although not a signatory to the purchase agreement, the concursus proceeding also listed Dr. Adrian Talbot, Mrs. Soltau-Talbot's husband, as a defendant. Although Dr. Talbot is an appellant here, we reference Mrs. Soltau-Talbot as the Buyer.

[2] Ms. Dixon testified that the Sellers inherited the property from their parents.

inquiry as to whether the Agreement provided that the sale was to be a financed one and the effect of the Agreement's condition that:

> This sale is conditioned upon the ability of **BUYER** to borrow with this Property as security for the loan the sum of $\_\_TBD\_\_ or \_\_% of the Sale Price by a mortgage loan or loans at an initial interest rate not to exceed \_\_\_\_\_% per annum, interest and principal, amortized over a period of not less than \_\_\_\_\_ years, payable in monthly installments or on any other terms as may be acceptable to the **BUYER** provided that those terms do not increase the cost, fees or expenses to the **SELLER**.

The Agreement further indicated that the loan was to be secured by "Fixed Rate Mortgage[.]" Following "Other financing conditions[,]" it provided that: "Financing to be done w/credit union in New Orleans that buyer is member of. Buyer has already prequalified."

In support of their claim to the deposit, the Sellers argued that, while the Agreement indicated that the sale was to be a financed one, the "TBD" and otherwise uncompleted aspects of the financing details indicated that the sale was not, in fact, contingent on financing. As the sale was not completed, the Sellers sought the deposit by the purchase agreement's provision that:

> **DEFAULT OF AGREEMENT BY BUYER**: In the event of any default of this Agreement by the **BUYER**, the **SELLER** shall have at the **SELLER'S** option the right to declare this Agreement null and void with no further demand, or to demand and sue for any of the following: 1) Termination of this Agreement; 2) Specific performance; 3) Termination of this Agreement and an amount equal to 10% of the Sale Price as stipulated damages.
>
> *Further, the* **SELLER** *shall be entitled to retain the Deposit.* The prevailing party to any litigation brought to enforce any provision of this Agreement shall be awarded their attorney fees and costs. The **BUYER** may also be liable for Broker fees.

(Emphasis added.)

Conversely, the Buyer contended that she was unable to secure financing and that, by operation of the financing contingency, she was entitled to the return of the deposit pursuant to the following:

> **RETURN OF DEPOSIT:** The Deposit shall be returned to the **BUYER** and this Agreement declared null and void without demand in consequence of the following events:
>
> . . . .
>
> 2) If this Agreement is subject to the **BUYER'S** ability to obtain a loan and the loan cannot be obtained, except as stated in lines 70 through 77 of this Agreement, but *only if the **BUYER** has made timely application for the loan and made good faith efforts to obtain the loan*[.]

(Emphasis added.)

Following a hearing, the trial court determined that the Buyer failed to prove that she made a good faith effort to obtain financing. Thus, the trial court ruled in favor of the Sellers and ordered that the Rapides Parish Clerk of Court tender the subject deposit to them.

The Buyer appeals, asserting that:

1. The trial court erred as a matter of law by shifting the burden to Appellant;

2. The trial court erred as a matter of law, by holding that Appellant did not make a reasonable effort to fulfill her obligations;

3. The trial court erred as a matter of law when it found Ms. Talbot forfeited her $30,000.00 deposit to the Sellers.

**Discussion**

*Burden of Proof*

In her first assignment of error, the Buyer references the trial court determination that she failed to sustain her burden of proving her good faith efforts to obtain financing. She contends, however, that the trial court erred in

3

determining that she was required to sustain the burden of proof, "rather than requiring Seller to prove the contract had been breached in bad faith."

However, the Buyer's argument accounts for neither the fact that this matter is a concursus proceeding nor the specific wording of the contractual provision under which she advanced her claim. Louisiana Code of Civil Procedure Article 4651 explains that such a proceeding is "one in which two or more persons having competing or conflicting claims to money, property, or mortgages or privileges on property are impleaded *and required to assert their respective claims contradictorily against all other parties* to the proceeding." (Emphasis added.) *See also* La.Code Civ.P. art. 4654 (providing that a petition instituting a concursus proceeding "shall allege the nature of the competing or conflicting claims, and shall include a prayer that all of the persons having such claims be required *to assert their respective claims contradictorily against all other* parties to the proceeding.") (emphasis added). Significantly, "[e]ach defendant in a concursus proceeding is considered as being both a plaintiff and a defendant with respect to all other parties." La.Code Civ.P. art. 4656.

Given that posture, it bears repeating that each party claimed the deposit by virtue of adverse provisions within the Agreement. The Sellers contended that the Agreement contained no financing contingency, that the Buyer failed to complete the sale, and, therefore, that they were able to "retain the Deposit" by enforcing the "**<u>DEFAULT OF AGREEMENT BY BUYER</u>**" provision.[3]

---

[3] The Sellers repeat that claim in their appellees' brief to this court. They argue that, notwithstanding the Buyer's argument regarding financing, "a more simple determination and conclusion was that the contract did not require as a condition that the buyer obtain financing." However, the trial court clearly rejected that argument and addressed its findings based upon such a condition. Although the Sellers focus on those aspects of the financing details left either unmarked or marked by "TBD," it is important to note that the financing contingency portion of the Agreement affirmatively indicated that the loan was to be secured by a "Fixed Rate Mortgage" and that, furthermore, a handwritten inscription referenced the Buyer's intention of

The Buyer contrarily referenced the Agreement's "**RETURN OF DEPOSIT**" provision, asserting that the Agreement was "subject to [her] ability to obtain a loan and the loan c[ould not] be obtained[.]" Thus, the Buyer noted that the provision indicates that "[t]he Deposit shall be returned to [her.]" However, that provision further indicates that the deposit was to be returned "*only if the BUYER has made timely application for the loan and made good faith efforts to obtain the loan*[.]" (Emphasis added.)

In ruling, the trial court referenced the burden of proving the Buyer's good faith effort in attempting to obtain financing, stating:

> The issue before the Court is whether the buyer, after signing the buy-sell agreement on February 11, 2015, was in good faith in attempting to obtain financing for the house prior to the extended closing date of April 15, 2015.
>
> A contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to obtain ownership of the thing. Three circumstances must exist for perfection of the contract: the thing sold, the price and consent. La. C.C. Art. 2439. A conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive. La. C.C. Art. 1767. The obligation subject to a condition in this case is the sale of the house. The approval of financing was the uncertain event which suspended enforcement of the sale. The suspensive condition imposes on the buyer the duty to make a good faith effort to obtain the loan. Whether she has acted in good faith depends on the facts and circumstances in each case. If the buyer, through no fault of her own, is unable to obtain the loan, she is released from her obligation to purchase and is entitled to the return of her deposit. *Woods v. Austin*, 347 So.2d 897 (3rd Cir., 1997); La. C.C. Art. 1771.
>
> . . . .

---

using a New Orleans credit union. Although the Buyer testified that the mortgage lender was in North Carolina rather than New Orleans, that testimony does not otherwise reveal a lack of agreement that the purchase was conditioned on financing. Upon questioning, the agent who completed the Agreement responded "Most definitely" when asked whether it was his understanding that the sale was to be a financed one. He explained that certain details of the financing provision were not completed as he did not know the terms of the prospective loan, but only that it was required to be a fixed rate mortgage.

Good faith requires she make a reasonable effort to obtain the agreed upon loan. The only evidence of her "reasonable effort" to obtain a loan is her testimony on the determinative issue which was not corroborated by other evidence.

Therefore, the Court finds that Andrea Saltau-Talbot did not meet her burden of proof that she was in good faith in obtaining a loan to comply with the suspensive condition in the February 11, 2015, Buy/Sell Agreement . . . .

To the extent she appeared as a plaintiff in her own claim, the Buyer asserted that the contract contained a financing contingency and, as she was unable to obtain financing, her obligations under the Agreement could not be enforced by the Seller. *See* La.Civ.Code art. 1767 (providing, in part, that: "A conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive."). The Buyer thus initiated her claim under the contractual provision requiring her good faith effort in obtaining the loan as a further condition for the return of the deposit. Recognizing that claim, the trial court did not err in articulating that it was the Buyer's burden of proving that condition. *See, e.g., Int'l Carriers, Inc. v. Pearl River Navigation, Inc.*, 14-1189, p. 9 (La.App. 4 Cir. 4/15/15), 166 So.3d 1114, 1119 (noting that "interpleaded claimants must establish their respective claims to the fund.").

This assignment lacks merit.

*Merits*

By her final two assignments, the Buyer contends that the trial court was manifestly erroneous in determining that the evidence did not support a finding that she made a good faith effort to obtain financing for the home. She references the details of her testimony regarding efforts to obtain a mortgage from various financial institutions. In recounting her testimony, the trial court explained that:

6

After the buy-sell contract was signed by the parties, the buyer started her search for a conventional loan at a regular rate. Because she and her husband own mortgage property in North Carolina, she contacted the bank there to request financing the Alexandria house and learned they only provided loans on North Carolina real estate.

She then applied with Capital One Bank in Alexandria only to discover her credit report showed a 2005 "charge off." She testified after she and her first husband divorced, he defaulted on a loan that she subsequently paid. Once it was paid, she was under the impression it would not appear on her credit report and was surprised when Capital One informed her it was on her report. Because of the 2005 charge off, Capital [O]ne would not loan her money for the purchase of the house.

She then began to search for funding on the computer and found Gateway Funding. Who required her to make repairs and [s]ubsequently gave her a pre-approval for funding.

Gateway contacted and hired an Alexandria attorney, George Fine to check the title and handle the closing. He performed some curative work and then notified Gateway on March 13, 2015, that he had an unencumbered, marketable title and was ready to proceed with the closing. While this process was going on, Andrea made arrangements with Liberty Mutual to provide homeowner's insurance at the time of the closing.

Because of Andrea's search for funding, the closing on the house was extended from March 15 to March 31, 2015, and later to April 15, 2015.

She then sought financing with NOLA Lending and was also rejected by them.

Because she was unable to obtain financing, she didn't ask to extend the closing date after April 15, 2015, so she moved out of the house and requested a refund of her deposit.

The transcript supports the trial court's observations. The Buyer testified as to each lending institution she contacted in order to obtain financing. Those included a mortgage lender in North Carolina, Capital One, Gateway Funding, and, finally, the NOLA Lending Group. According to her testimony, she was unable to pursue funding with the North Carolina institution as it did not offer mortgage services for property in Louisiana. She also explained that, although she applied with the latter three organizations, she was never successful in obtaining financing. The Buyer testified that she even completed certain repairs to the home to facilitate

approval from Gateway Funding. However, she explained that, despite her efforts, she was ultimately unable to obtain approval from any of the institutions. In particular, the Buyer testified she encountered difficulty in obtaining financing due to a poor credit history related to an earlier divorce.

In evaluating her testimony, the trial court explained that it was "impressed with Ms. Andrea Soltau-Talbot and believes her testimony was credible. She testified she attempted to obtain financing with her old bank in North Carolina, Capital One in Alexandria, Gateway and NOLA, both in New Orleans." We are mindful that such credibility determinations are within the province of the fact finder and will not be disturbed on appeal absent an abuse of discretion. *Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So.3d 620.

Certainly, there is no evidentiary basis to disturb that determination following review of the record. While the Sellers suggest that the Buyer's claim of inability to obtain financing was undermined by her subsequent purchase of a more expensive property, we find no merit in that contention. Rather, the Buyer testified that she was able to obtain a multiple-indebtedness mortgage on the later-acquired property with the assistance of a new mortgage broker. That subsequent event with a different property, different lender, and different financing product is not contrary to the trial court's finding as to the Buyer's credibility in her testimony regarding the present property.

Having maintained the trial court's credibility determination, however, we find that its subsequent, anomalous determination that the Buyer ultimately failed to meet her burden of proof is manifestly erroneous. Despite its determination that her "testimony was credible" and that "[s]he testified she attempted to obtain financing" from various institutions, the trial court stated:

8

However, she did not produce any documents to prove she applied for a loan and didn't subpoena one loan officer to testify why her financing was denied. All that would have been required was the loan officer from Capital One in Alexandria to appear in Court with the application for financing and testify that she did apply and the reason her request was denied.

Good faith requires she make a reasonable effort to obtain the agreed upon loan. The only evidence of her "reasonable effort" to obtain a loan is her testimony on the determinative issue which was not corroborated by other evidence.

Therefore, the Court finds that Andrea Saltau-Talbot did not meet her burden of proof that she was in good faith in obtaining a loan to comply with the suspensive condition in the February 11, 2015, Buy/Sell Agreement . . . .

While it is apparent that the Buyer did not supplement her testimony with corroborating documentation,[4] we find that the trial court erroneously concluded that her failure to do so was fatal to her claim. Rather, the plaintiff spoke extensively regarding her efforts to obtain financing and the financial institutions rejection of her applications. The trial court found merit in that testimony, detailing her efforts in its reasons for ruling.

However, the trial court specifically noted that the Buyer "did not produce any documents to prove she applied for a loan and didn't subpoena one loan officer to testify why her financing was denied." It suggested that: "All that would have been required was the loan officer from Capital One in Alexandria to appear in Court with the application for financing and testify that she did apply and the reason her request was denied." This requirement, however, strays from the confines of the Agreement.

Rather, the Agreement provided, in pertinent part, that if the loan could not be obtained, the deposit was returnable to the Buyer "but only if [she] made timely

---

[4] The Buyer attempted to introduce certain financial institution materials, as well as correspondence with the realty company. However, the trial court excluded the evidence given its third-party nature and lack of associated witnesses. The Buyer proffered the exhibits for the record.

application for the loan and made good faith efforts to obtain the loan[.]" It does not qualify that return based upon a "reason" the loan could not be obtained. Thus, we find that the trial court was manifestly erroneous in concluding that the Buyer failed to meet her burden of proof by such corroboration. Instead, the Buyer testified regarding her efforts in obtaining the loan and her inability to do so. The trial court found that evidence credible. Following review, we find that the record does not otherwise question that testimony. Accordingly, we conclude that the record dictates a finding that the Buyer satisfied her burden of proving her entitlement to the return of the deposit pursuant to the Agreement. Below we enter a ruling in this regard.

**DECREE**

For the foregoing reasons, the judgment of the trial court is reversed. Judgment is recast and rendered as follows:

> IT IS ORDERED, ADJUDGED AND DECREED that there be Judgment in favor of ANDREA TALBOT and ADRIAN TALBOT, M.D. and against HOLLY DIXON, SANDRA DAMICO, DIANE RATNER, and JAYN ROBINSON, and further the Rapides Parish Clerk of Court is ordered to pay unto ANDREA TALBOT and ADRIAN TALBOT the sum of $30,000.00 on deposit in the Registry of the Ninth Judicial District Court, Parish of Rapides, along with all of the accumulated interest.

All costs of this proceeding are assessed to the appellees, Holly Dixon, Sandra Damico, Diane Ratner, and Jayn Robinson.

**REVERSED AND RENDERED.**